450 A.2d 103

**COMMONWEALTH of Pennsylvania**

v.

**Paula PRINGLE, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 16, 1982.

Filed Sept. 3, 1982.

Petition for Allowance of Appeal
Denied Jan. 18, 1983.

68

Thomas M. Place, Carlisle, for appellant.

Theodore B. Smith, III, Assistant District Attorney, Carlisle, for Commonwealth, appellee.

Before JOHNSON, MONTEMURO and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The Appellant, Paula Pringle, files this direct appeal to our Court following her conviction after a non-jury trial, the denial of post-trial motions, and her sentencing on a charge of disorderly conduct. The episode which led to these charges, which will be more fully discussed below, involved the Appellant's conduct in protesting a friend's arrest by repeatedly shouting crude epithets at the arresting officers as a large crowd gathered at the scene of the arrest.

On this appeal, she contends that the provisions of the disorderly conduct statute under which she was convicted are unconstitutionally vague and overbroad in violation of the First and Fourteenth Amendments to the United States Constitution. She further argues that the lower court erred in finding that words she used in the incident were both

"obscene" and were "fighting words" and that they created a clear and present danger of inciting lawless actions by others. Finally, she maintains that the lower court failed to comply with our Rules of Criminal Procedure in her sentencing.

Prior to examining the various legal issues presented, it is appropriate that we review the factual circumstances which resulted in the charge of disorderly conduct against the Appellant. The record shows that late on the evening of September 28, 1979, an officer of the Shippensburg Police Department was attempting to arrest an unruly person in front of a tavern on a main town square. The subject of the arrest was violently resisting the officer and other officers who arrived to assist in the arrest. During their attempts to subdue the individual, a crowd of approximately fifty (50) people gathered to watch. The Appellant, Paula Pringle, arrived at the scene and recognizing the person being arrested as a friend, became obviously angered at the police officers. She repeatedly shouted "goddamn fucking pigs" at the officers, from various locations in the area. The first arresting officer testified that several times when she stated these words she looked directly at him. He also testified that he was fearful that the Appellant's conduct, at that time, might motivate some persons in the crowd, including some who had come from the nearby tavern, to interfere with the arrest. Another officer, in addition to hearing the Appellant repeatedly yell "goddamn fucking pigs", also heard her shout "fucking pig, let him go" more than once. He expressed the belief that her conduct could have motivated those in the crowd to try to help her friend who was then resisting the arrest. The Appellant was charged with disorderly conduct in violation of the Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 C.P.S.A. § 5503(a)(3). That statute provides, in pertinent part: "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: ... uses obscene language, or makes an obscene gesture ...."

As a preface to our discussion of the specific arguments presented on this appeal, we note that we find guidance for the disposition of this appeal in two relatively recent Pennsylvania appellate decisions involving analogous factual situations. In 1980, our Pennsylvania Supreme Court issued an opinion in *Commonwealth v. Mastrangelo,* 489 Pa. 254, 414 A.2d 54, appeal dismissed, *Mastrangelo v. Pennsylvania,* 449 U.S. 894, 101 S.Ct. 259, 66 L.Ed.2d 124 (1980). That case involved an appeal by a defendant from a disorderly conduct conviction which resulted from his activities in repeatedly calling a parking meter officer a "fucking pig", and other profane and insulting names on the public streets. The Court concluded that the defendant was not exercising any constitutionally protested right of free speech in such circumstances and affirmed the conviction. In *Commonwealth v. Hughes,* 270 Pa.Super. 108, 410 A.2d 1272 (1979), a panel of our Court, in an opinion by Judge Hoffman, reached the same conclusion in reviewing a disorderly conduct conviction. In *Hughes,* the defendant engaged in unruly conduct which included the shouting of obscenities at members of the general public and at police officers at an early hour of the morning on a public street. In discussing the disorderly conduct statute, Judge Hoffman declared that a person may be guilty of disorderly conduct within the definition of the Act if in the presence of members of the general public he shouts obscenities at police officers, even though his intent may have been to insult the police rather than to cause public inconvenience, annoyance or alarm. 270 Pa.Super. at 111, 410 A.2d at 1274.

█ In view of the relatively recent pronouncements by this Court and our Supreme Court in cases involving conduct comparable to that engaged in by the Appellant herein, and the discussion in those cases of the application of the disorderly conduct statute, it is unnecessary for us to engage in yet another prolonged recitation of the same principles of law here. Suffice it to state that it is well-settled in our Commonwealth that one may be convicted of disorderly conduct for engaging in the activity of shouting profane

names and insults at police officers on a public street while the officers attempt to carry out their lawful duties.

The Appellant, through counsel, has forcefully argued her points before us, and we have given meaningful consideration to such issues. However, we find that each issue raised may be disposed of without difficulty. Her first contention, as set forth earlier in this Opinion, is that our disorderly conduct statute is vague and overbroad, in violation of applicable Amendments to our United States Constitution. Such claims were specifically examined and rejected in *Commonwealth v. Mastrangelo, supra,* and reference need only be made to the thorough discussion by our Supreme Court of such issues in that case.

The Appellant next contends that the words she used were not "obscene" or "fighting words" and that they did not create clear danger of inciting lawless action by others. It is evident that our Constitutional guarantees of freedom of speech forbid criminal punishment for the use of words or language except within certain limited classes. *Gooding v. Wilson,* 405 U.S. 518, 521–522, 92 S.Ct. 1103, 1106, 31 L.Ed.2d 408, 413 (1972). In *Chaplinsky v. New Hampshire,* 315 U.S. 568, 571–2, 62 S.Ct. 766, 769, 86 L.Ed. 1031, 1034–1035 (1942), the Court clearly explained the types of speech which do not enjoy Constitutional protection:

"Allowing the broadest scope to the language and purpose of the Fourteenth Amendment, it is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly out-

weighed by the social interest in order and morality. 'Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument.' *Cantwell v. Connecticut,* 310 U.S. 296, 309, 310, 60 S.Ct. 900, 906, 84 L.Ed. 1213, 128 A.L.R. 1352."

The Appellant has contended that the words she used in verbally abusing the police were not obscene. Cases are cited in which the use of the word "fuck" has been held not to violate statutes regulating the use of obscene words. See *Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1970) (where the defendant was arrested and convicted of disturbance of the peace for merely wearing a jacket bearing the inscription "Fuck the Draft"), and *Hess v. Indiana,* 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973) (where the defendant was convicted of a similar state law violation when he said words to the effect of "we'll take the fucking street later" during an antiwar demonstration). The holdings in such cases are completely out of context here, where the Appellant's crude epithets were directed pointedly at the officers. In *Cohen, supra,* the word in question was merely displayed on the defendant's clothing, while in *Hess, supra,* the defendant did not direct his words toward any particular person, and did not speak in a volume louder than the many other persons gathered in the area. As the great Justice Oliver Wendell Holmes wisely observed many years ago: "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne v. Eisner,* 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372, 376 (1918). Although in other circumstances the rule is well-established that to be obscene, the words must carry a sexual connotation [See *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), concerning a prosecution for mailing obscene materials], in the context of the instant case, it is

clear that in calling the officers "goddamn fucking pigs", the Appellant used "obscene" language within the contemplated context of the disorderly conduct statute.

█ Even if the words in issue would not be considered obscene, they certainly constituted "fighting words" and created a risk of public inconvenience, annoyance, alarm and the incitation of lawless behavior. They fit the Supreme Court's definition of "fighting words" as set forth in the passage quoted earlier in this Opinion from *Chaplinsky v. New Hampshire, supra,* in that by their very utterance they inflict injury. We also again refer to the holdings of our Pennsylvania Courts in *Commonwealth v. Mastrangelo, supra,* and *Commonwealth v. Hughes, supra,* on this point in situations involving similar factual settings. The Appellant's arguments to the contrary are clearly devoid of merit.

█ Finally, we turn to the Appellant's sentencing arguments. She contends that the lower court erred when it failed to place on the record its reasons for dispensing with a pre-sentence investigation. Pennsylvania Rule of Criminal Procedure 1403 A(2) provides:

> The sentencing judge shall place on the record his reasons for dispensing with the pre-sentence investigation report if the court fails to order a pre-sentence report in any of the following instances:
>
> (a) where incarceration for one year or more is a possible disposition under the applicable sentencing statues; or
>
> (b) where the defendant is less than twenty-one years old at the time of conviction or entry of a plea of guilty; or
>
> (c) where a defendant is a first offender in that he has not heretofore been sentenced as an adult.

It appears that at the time of sentencing, the Appellant was less than 21 years of age and also was a first offender, apparently thereby qualifying for the protections of Rule 1403 A(2)(b) and (c). We believe that the Appellant's claim

based upon Rule 1403 has merit. The lower court unfortunately failed to place in the record its reasons for dispensing with a presentence report. The record shows that the lower court granted the Appellant a hearing and resentencing after she contended that she had been denied an opportunity to speak on her own behalf prior to her original sentencing by the court.[1] While her request for resentencing also specifically mentioned the lower court's failure to comply with the Rule 1403 requirements at the time of the original sentencing, the lower court, in an apparent oversight, did not satisfy the Rule subsequent to the resentencing. Thus, although the lower court clearly articulated the rationale for its sentence, it is clear that we must vacate the judgment of sentence and remand to permit the lower court an opportunity to supplement the record by stating its reasons for dispensing with a pre-sentence investigation report, as required by Rule 1403 A(2). See *Commonwealth v. Weldon*, 287 Pa.Super. 533, 430 A.2d 1180 (1981); *Commonwealth v. Bryner*, 285 Pa.Super. 305, 427 A.2d 236 (1981). In reaching this conclusion, we reject the Commonwealth's contention that the Rule does not apply in this case because it involved an appeal to the Common Pleas court from a conviction and sentencing by a district magistrate in a summary proceeding. In his recent opinion in *Commonwealth v. Koch*, 288 Pa.Super. 290, 431 A.2d 1052 (1981), President Judge Cercone thoroughly explained why our Criminal Rules, unless specifically made inapplicable, must be followed in all *de novo* proceedings in our trial courts on summary violation appeals.

The Appellant's conviction is affirmed, but the judgment of sentence is vacated and the case remanded to permit the

1. The Appellant was originally sentenced by the trial court in this case immediately after finding she was guilty. Procedural problems have been created in other similar cases where lower courts have followed the practice of immediately sentencing a defendant after a conviction in a *de novo* appeal from a summary conviction. The proper procedure is for post-verdict motions to be decided before sentencing. See the discussion of this issue in *Commonwealth v. Williams*, 290 Pa.Super. 158, 434 A.2d 179 (1981).

lower court to specify its reasons for dispensing with a pre-sentence report, as required by Rule 1403 A(2).

We relinquish jurisdiction.