652 A.2d 909

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Brady L. BRYNER, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 19, 1994.

Filed Jan. 6, 1995.

James N. Bryant, Millheim, for appellant.

John K. Mort, Asst. Dist. Atty., Mifflintown, for Com., appellee.

Before BECK, HUDOCK and BROSKY, JJ.

HUDOCK, Judge.

"Go to hell, Betsy", when shouted in a public place, is the type of speech that most people would consider annoying, some provocative, and some downright frightening. But, is it "obscene" within the meaning of our statute proscribing disorderly conduct? That is the sole question presented by this appeal.

The facts may be summarized as follows: On September 3, 1993, Appellant was charged with the summary offense of disorderly conduct[1] as the result of refusing to exit Long's Auction Barn following a request to leave. The record reveals that Appellant, while standing near a table set up near the rear of the auction barn, was voicing his views about an ongoing local teachers' strike. He was asked to "hold it down" by Betsy Long, one of the owners of the auction barn. In response, Appellant, in a loud voice, twice told Mrs. Long to "go to hell, Betsy." A public sale, with several hundred people in attendance, was taking place at the time of the exchange. Following his arrest, Appellant was convicted of disorderly conduct before the District Justice. Appellant timely appealed his conviction to the Court of Common Pleas of Juniata County. On February 8, 1994, a hearing *de novo* was held wherein the trial court found Appellant guilty of the crime charged and sentenced him to a fine of $26.50 and costs of $68.50. This appeal followed. For the following reasons, we reverse.

Because we must determine whether the phrase shouted by Appellant is sufficient to sustain his conviction under the disorderly conduct statute, we must determine "whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offenses charged was supported by evidence.

---

1. 18 Pa.C.S. § 5503(a)(3). The crime of disorderly conduct may be graded as either a misdemeanor or summary offense. If "the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist[,]" the crime is a misdemeanor. 18 Pa.C.S. § 5503(b).

and inferences sufficient in law to prove guilt beyond a reasonable doubt." *Commonwealth v. Jackson*, 506 Pa. 469, 472–73, 485 A.2d 1102, 1103 (1984). "Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The factfinder is free to believe all, part or none of the evidence." *Commonwealth v. Tate*, 485 Pa. 180, 182, 401 A.2d 353, 354 (1979).

■ Section 5503 of the Pennsylvania Crimes Code provides, in pertinent part:

(a) **Offense defined.**—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

\* \* \* \* \* \*

(3) uses obscene language, or makes an obscene gesture[.]

18 Pa.C.S. § 5503(a)(3). Since Appellant was charged only under this subsection, to be guilty he must have used obscene language with the intent to cause public inconvenience, annoyance or alarm.

On appeal, Appellant argues that there is insufficient evidence to sustain his conviction because the phrase "go to hell, Betsy" is neither obscene nor constitutes "fighting words" under 18 Pa.C.S. § 5503(a)(3). Appellant also claims that there was no evidence presented to establish an intent to cause public inconvenience.

■ Before addressing the merits of Appellant's claim, we first note that section 5503 has been held to be constitutional. In *Commonwealth v. Mastrangelo*, 489 Pa. 254, 414 A.2d 54 (1980), *cert. den.*, 449 U.S. 894, 101 S.Ct. 259, 66 L.Ed.2d 124, our Supreme Court determined that the disorderly conduct statute was neither overbroad nor vague and thus, did not violate the First Amendment to the United States Constitution.

We must then determine whether Appellant's words "go to hell, Betsy," are criminal under section 5503(a)(3). To do so,

we must first satisfy ourselves that a conviction under this subsection does not offend one's First Amendment right of free speech. We recognize that freedom of speech is not absolute. In *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), it was explained that:

> Allowing the broadest scope to the language and purpose of the Fourteenth Amendment, it is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.

*Chaplinsky,* 315 U.S. at 571–72, 62 S.Ct. at 769. With this in mind, we must decide if Appellant's language is obscene. In *Commonwealth v. Pringle,* 304 Pa.Super. 67, 450 A.2d 103 (1982), this Court reviewed the conviction of the appellant who was found guilty under subsection (a)(3) of the disorderly conduct statute after repeatedly referring to police officers as "goddamn [f——————] pigs" as they were attempting to arrest another individual. On appeal, the appellant argued that her words were not obscene, and thus, were protected under the First Amendment of the United States Constitution. In rejecting the appellant's claim, this Court, although recognizing several United States Supreme Court cases dealing with the use of obscene words,[2] distinguished these cases and held that "one may be convicted of disorderly conduct for engaging in the activity of shouting profane names and insults at *police officers* on a public street while the officers attempt

---

2. *See Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971) (where the defendant was arrested and convicted of disturbance of the peace for merely wearing a jacket bearing the inscription "F——— the Draft"); *Hess v. Indiana,* 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973) (where the defendant's disorderly conduct conviction was reversed when the defendant, an antiwar demonstrator, stated that "We'll take the F——————— street later (or again).").

to carry out their lawful duties." *Pringle,* 450 A.2d at 106 (emphasis added).[3]

■ Although the *Pringle* court found that calling police officers "goddamn [f————] pigs" was obscene under this state's disorderly conduct statute, the word "obscene" was not defined. It is important to define the word "obscene" because obscenity is not within the area of constitutionally protected speech under the First Amendment. *See Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). The United States Supreme Court, in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), set forth the guidelines in determining what language constitutes "obscenity" as follows:

(a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Miller,* 413 U.S. at 24, 93 S.Ct. at 2615. Further, we note that the *Miller* test has been adopted by our legislature in defining what constitutes obscene materials. *See* 18 Pa.C.S. § 5903(b).

■ With this definition in mind, it is clear that the epithet hurled at Mrs. Long in this case did not, in any way, appeal to anyone's prurient interests. Because Appellant's words fall

---

**3.** In *Pringle v. Court of Common Pleas,* 778 F.2d 998 (3d Cir.1985), the Third Circuit Court of Appeals, in an opinion that is to be construed narrowly, granted Pringle's writ of *habeas corpus.* In a per curiam opinion, the Third Circuit stated that:

We hold merely that the [disorderly conduct statute], as applied to Pringle's particular speech in 1979, did not meet constitutional requirements of adequate notice. The Commonwealth, speaking through its Superior Court, has now declared that the words uttered by Pringle, when directed at police officers, fall within the proscription of the statute. Therefore, the due process argument which prevails today will no longer be available to similarly situated defendants whose actions occurred after the 1982 Superior Court decision. *Pringle,* 778 F.2d at 1004.

short of that language proscribed in *Miller*, we find that Appellant's conviction cannot be upheld.[4]

Judgment of sentence vacated. Appellant discharged.

**4.** We do not have to discuss whether Appellant's words constituted fighting words. Subsection (a)(3) of the disorderly conduct statute is narrowly drawn to prohibit only obscene words or gestures. Fighting words, which, like obscene words, are not a class of constitutionally protected speech, concern a separate and distinct analysis which we do not have to reach.