Louis BROCKWAY, Plaintiff

v.

Jim R. SHEPHERD and Kimberly Milazzo, Defendants.

No. 4:CV–96–1220.

United States District Court, M.D. Pennsylvania.

Oct. 4, 1996.

Barry H. Dyller, Wilkes Barre, PA, for plaintiff.

Harry T. Coleman, Abrahamsen, Moran & Conaboy, Scranton, PA, for defendant Shepherd.

David E. Heisler, Lenahan & Dempsey, Scranton, PA, for defendant Milazzo.

### *MEMORANDUM*

McCLURE, District Judge.

### *BACKGROUND:*

On July 1, 1996, plaintiff Louis Brockway initiated this action by filing a complaint pursuant to 42 U.S.C. § 1983. Brockway alleges that he was arrested and prosecuted without probable cause by defendant Kimberly Milazzo, a police officer employed by the Courtdale (Luzerne County, Pennsylvania) Police Department. The arrest was for

disorderly conduct after Brockway made an obscene gesture at Milazzo.

Before the court is a motion by Milazzo to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

Also named as a defendant is Jim R. Shepherd, a police officer employed by the Luzerne Police department. A separate motion to dismiss was filed by Shepherd, but will not be addressed in this memorandum and order as counsel for plaintiff has indicated to the court that Brockway and Shepherd have agreed to settle the matter. The motion to dismiss filed by Shepherd will be denied as moot. However, based on the settlement and because we grant Milazzo's motion to dismiss, the complaint will be dismissed in its entirety.

## DISCUSSION:

### I. STANDARD OF REVIEW

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) admits the well pleaded allegations of the complaint, but denies their legal sufficiency. *Hospital Building Co. v. Trustees of the Rex Hospital,* 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976). "It is the settled rule that 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Leone v. Aetna Casualty & Surety Co.,* 599 F.2d 566, 567 (3d Cir.1979) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). The complaint must be read in a light most favorable to the plaintiff with every doubt resolved in plaintiff's favor. *In re Arthur Treacher's Franchisee Litigation,* 92 F.R.D. 398, 422 (E.D.Pa.1981).

### II. STATEMENT OF FACTS

The facts recited herein are limited to those which relate to defendant Milazzo, as the facts with respect to defendant Shepherd are immaterial for present purposes.

On January 14, 1996, Brockway, while a passenger in a car, gestured at Milazzo with his middle finger (no explanation for such conduct is provided). Milazzo made a vehicle stop, arrested Brockway, and charged him with disorderly conduct in violation of 18 Pa.Cons.Stat.Ann. § 5503(a)(3). Other charges against Brockway were withdrawn by Milazzo at a preliminary hearing. The charge of disorderly conduct was "waived" to the Court of Common Pleas without a finding of probable cause. On June 24, 1996, the Luzerne County District Attorney's Office "nolle prossed" (dismissed) all charges against Brockway.

According to Brockway, the gesture which he made at Milazzo is not proscribed by Pennsylvania law, so that there was no probable cause either for the initial stop or for the subsequent arrest. Milazzo moves to dismiss because: (1) a gesture like that made by Brockway violates § 5503(a)(3); and (2) the doctrine of qualified immunity bars recovery.

### III. QUALIFIED IMMUNITY

A defendant is entitled to qualified immunity from a claim of a violation of a constitutional right if the right was not clearly established at the time of the alleged deprivation and the contours of the right are sufficiently clear that a reasonable official would understand that what he or she is doing violates that right. *In re City of Philadelphia Litigation,* 49 F.3d 945, 961 (3d Cir.1995) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)), *cert. denied,* —— U.S. ——, 116 S.Ct. 176, 133 L.Ed.2d 116 (1995). The doctrine of qualified immunity protects public officials so that they may perform discretionary duties in a swift and firm manner. *Id.* at 960–961 (quoting *Harlow* at 807, 102 S.Ct. at 2732; *Scheuer v. Rhodes,* 416 U.S. 232, 246, 94 S.Ct. 1683, 1691, 40 L.Ed.2d 90 (1974)). The determination of whether qualified immunity applies should be made as early in the litigation as possible to spare a public official/defendant who properly raises the defense from the time and expense of defending a suit on the merits. *Id.* at 961 (quoting *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991)).

Furthermore, for there to be liability, the right alleged to have been violated "must have been 'clearly established' in a more particularized, and hence more relevant, sense." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97

L.Ed.2d 523 (1987). While the abstract right to be free from unreasonable seizure clearly is established, for qualified immunity purposes the right must be considered on a more specific level: "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* *In re City of Philadelphia Litigation* at 961 (brackets in original).

Brockway claims that there was no probable cause either for the arrest or the prosecution. Probable cause for an arrest exists if, at the time of the arrest, there were facts and circumstances within the knowledge of the police officer sufficient to warrant belief by a prudent person that the arrestee had committed or was committing an offense. *Hunter v. Bryant,* 502 U.S. 224, 228–229, 112 S.Ct. 534, 536–537, 116 L.Ed.2d 589 (1991). *See also Illinois v. Gates,* 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983) (totality of the circumstances test in context of probable cause for issuance of search warrant).

In this case, arrest and prosecution without probable cause in the general sense may be well-established, but the "more particularized sense" in which the doctrine of qualified immunity applies is the reasonableness of Milazzo's belief that there was probable cause for the charge of disorderly conduct, given the conduct of Brockway. This application gives rise to the question of whether the gesture made by Brockway may constitute a violation of § 5503(a)(3).

### IV. DISORDERLY CONDUCT

■ The relevant statutory provision reads:

A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: . . .

(3) uses obscene language, or makes an obscene gesture; . . .

18 Pa.Cons.Stat.Ann. § 5503(a)(3). For purposes of the statute, the definition of "obscene" is consistent with that applied for purposes of determining what material is not protected under the First Amendment. *Commonwealth v. Bryner,* 438 Pa.Super. 473,

652 A.2d 909, 911–912 (1995) (applying test set forth in *Miller v. California,* 413 U.S. 15, 24, 93 S.Ct. 2607, 2614–2615, 37 L.Ed.2d 419 (1973)).

### V. BROCKWAY'S CONDUCT AS "DISORDERLY"

■ For some unexplained reason, Brockway gestured toward Milazzo with his hand, middle finger extended. The meaning of this gesture is well-known and easily understood, and need not be repeated here. Both sides concede that no appellate court in Pennsylvania has addressed the issue of whether the gesture is obscene for purposes of § 5503(a)(3).

Plaintiff cites an opinion by a Court of Common Pleas which held that extending one's middle finger is not an obscene gesture for purposes of the statute. *Commonwealth v. Danley,* 13 D. & C. 4th 75 (1991). We do not think that a single opinion by a trial court (including this one) would render a right "well-established" for purposes of qualified immunity. We note, however, that a number of courts considering utterances or writings of the word or phrase which Brockway's gesture is intended to convey, or similar phrases, have held that there is no obscenity. *See, e.g., Hess v. Indiana,* 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973) (contention that word was obscene is "untenable"); *Papish v. Board of Curators of the University of Missouri,* 410 U.S. 667, 93 S.Ct. 1197, 35 L.Ed.2d 618 (1973) (word, combined with "mother," in headline of student newspaper not obscene); *Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971) (word printed on jacket followed by "the draft" not obscene because it was not erotic).

The question of whether a reasonable police officer would consider the use of these words "obscene" for purposes of the same disorderly conduct statute was answered some years ago by the Third Circuit:

A responsible citizen or official construing the statute in 1979, the time of Pringle's action, would assume logically that the legislature, in penalizing "obscene" speech, did not intend to infringe First Amendment protections. Thus, that citi-

zen or official would look to United States Supreme Court interpretations of what obscenity is unprotected by the Constitution, and find that in every case in which the Supreme Court was faced with the same offensive word uttered by Pringle it had determined that the term was not obscene. . . .

*Pringle v. Court of Common Pleas,* 778 F.2d 998, 1002 (3d Cir.1985) (*"Pringle II "*). The Third Circuit remanded the case to the district court with directions to issue a writ of habeas corpus.

The Third Circuit's opinion followed an opinion of the Superior Court of Pennsylvania holding that the language was obscene because it was directed at police officers. *Commonwealth v. Pringle,* 304 Pa.Super. 67, 450 A.2d 103, 106 (1982) (*"Pringle I "*). The Superior Court later referred to this distinction when it held that the language proscribed by § 5503(a)(3) is coextensive with the definition of obscenity for purposes of the First Amendment. *Bryner,* 652 A.2d at 911 and n. 3. The Superior Court properly pointed out that the Third Circuit's holding was that Pringle could not be expected to know that use of the vulgarity would be considered a criminal act, reasoning which is consistent with due process (not free speech) jurisprudence. *Pringle II* at 1003–1004.

We think that the primary problem is the use of the word "obscene" in a disorderly conduct statute, and the application of the *Miller* standard to the conduct. *Miller* involved a conviction for distributing "obscene" material. 413 U.S. at 16, 93 S.Ct. at 2610–2611. The Supreme Court held that the standard was:

(a) whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest, . . .; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

413 U.S. at 24, 93 S.Ct. at 2615 (citation, internal quotations omitted).

It seems to this court that there is an inherent conflict in applying the *Miller* standard to an act intended to cause public inconvenience, annoyance or alarm. That is, the manner in which § 5503(a) is drafted seems to cause a sort of overlap of the concepts of obscenity or decency and disorderly conduct. The type of conduct at issue in *Miller* is covered by 18 Pa.Cons.Stat.Ann. § 5903, in which the definition of "obscene," § 5903(c), is substantially the same as recited in *Miller.*

The type of conduct at issue here, however, is not sexual in nature. Rather, the conduct is intended to express disrespect for and to offend the police officer. That a base term for sex is represented or used does not alter the meaning and intent of the gesture or language. In other words, using a base term for sex does not change the disrespectful, offensive communication into one that appeals to the prurient interest. It would be a rare person who would be "turned on" by the display of a middle finger or the language it represents, although certainly some people may approve of or even enjoy such conduct by others.

This is not to say that sexual acts may not constitute disorderly conduct for purposes of § 5503(a). Such an act, if done in public, would be likely to cause public annoyance by disrupting traffic, etc. The problem is that the term "obscene gesture" has a meaning in common parlance which includes display of the middle finger, and the term "obscene language" has a meaning in common parlance which includes use of vulgar language. The definition of "obscene" under *Miller,* however, is not the same as in common parlance, and the same gesture and/or language would not fall within the definition of "obscene" under *Miller* because there is no appeal to the prurient interest. *See esp. Cohen* (word which is not erotic is not obscene).

In the case of conduct such as Brockway's or language such as that described in *Bryner,* § 5503(a)(3) seems to defeat its own purpose. The clear intent is to prevent people from using such gestures or language because they could anger the police officer or excite on-lookers and prevent the performance of the officer's duties. In First Amendment terminology, the "fighting

words" exception to Free Speech, as opposed to "obscenity," is applicable. This type of conduct would appear to fall under § 5503(a)(1) or (4).

When the term "obscene" is used in the manner it was applied in *Miller*, however, the language or conduct must be sexual in nature, i.e. must appeal to the prurient interest. Since the language or conduct is not itself sexual in nature, but only uses a vulgar term for sex in a tangential manner, the use of the word "obscene" as defined by *Miller* no longer applies to the language or conduct in question, and so no longer furthers the interest for which the statutory provision is intended.

■ In short, depending on its context, the gesture made by Brockway may support a charge of disorderly conduct, but not under § 5503(a)(3). In this context, the gesture does not appear to have been sufficient to constitute fighting words or to excite others to interfere in the performance of Milazzo's duties as a police officer, and he was not so charged. Brockway was not subject to arrest despite his use of an offensive gesture.

The next question is whether the right of Brockway to use the gesture in this way was well established at the time of the arrest.

## VI. CLEARLY ESTABLISHED RIGHT

■ The problem with concluding that the right was well established is in the inconsistency of the opinions on point. The opinions of the Supreme Court seem rather clear that vulgar language, without more, is not "obscene" for purposes of the First Amendment. The portion of the Third Circuit's opinion in *Pringle II* which is quoted above appears to reflect the same conclusion. However, the holding of the Superior Court in *Pringle I* appears to be an attempt to construe the statute in such a way as to pass constitutional muster, i.e. by defining "obscene" in a manner consistent with Supreme Court authority. Further, the Third Circuit's view must be considered properly as dicta because it relied on due process reasoning despite its reliance on First Amendment law.

The Superior Court's opinion, then, may be read by a reasonable official as a sort of erasure of the constitutional shortcomings of § 5503(a)(3). That is, the Superior Court held that "obscene language" and "obscene gestures" are prohibited, and that their prohibition is consistent with the First Amendment (based on the adoption of the *Miller* definition of "obscene"). The ordinary understanding of "obscene gesture" includes the conduct of Brockway; in fact, most people if asked to describe an "obscene gesture" probably would refer to this exact gesture. A reasonable official is not expected to understand the subtleties of First Amendment law. Based on the Superior Court's opinion, then, it is entirely reasonable to conclude that use of the gesture made by Brockway is unlawful and its proscription does not violate the Free Speech Clause. At worst, reasonable officials could differ on the issue. *See In re City of Philadelphia Litigation* at 961–962 (defendants immune if officers of reasonable competence could disagree on whether the action was lawful; quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)).

■ It is important, however, at some point to establish firmly the right in question. We therefore emphasize: The use of profane or vulgar language is protected by the First Amendment unless some exception to the general protection applies. That is, standing alone, profane or vulgar language is not itself obscene and does not amount to fighting words. The same principle applies to the use of a gesture which represents profane or vulgar language, and the communication must be looked at in its entirety and in context to determine whether an exception to the general protection of speech applies. More specifically, § 5503(a)(3) does *not* proscribe the display of a person's middle finger with the ordinary intent (i.e. to show disrespect) because such conduct is not sexual in nature.

The above discussion should be understood to be limited to § 5503(a)(3), and is not intended to be a comment on whether the gesture at issue violates any other criminal provision.

## VI. CONCLUSION

We conclude that 18 Pa.Cons.Stat.Ann. § 5503(a)(3), as interpreted by the state courts, requires obscene conduct as the term is defined for purposes of the First Amendment. Obscene conduct for such purpose is sexual in nature. The conduct of Brockway in displaying his middle finger toward a police officer is not sexual in nature. Brockway therefore had a right not to be arrested and charged with violating § 5503(a)(3).

However, this right was not clearly established because the Superior Court opinion on the issue purports to define "obscene" in a manner consistent with Supreme Court authority interpreting the First Amendment, thereby circumventing any First Amendment bar to the enforcement of § 5503(a)(3). Reasonable officials could differ as to whether the definition adopted by the Superior Court did so in a valid manner, although this court concludes that it did not for purposes of the conduct at issue.

Milazzo is entitled to the benefit of qualified immunity, and her motion to dismiss will be granted on that basis.