J-S68017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| JASON ROY WAUGAMAN | |
| Appellant | No. 1859 WDA 2015 |

Appeal from the Judgment of Sentence September 30, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0000831-2015

BEFORE:  SHOGAN, J., SOLANO, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SOLANO, J.:                    **FILED OCTOBER 31, 2016**

Appellant, Jason Roy Waugaman, appeals the judgment of sentence of 90 days' probation and costs imposed following his summary conviction of disorderly conduct for making an obscene gesture.  We reverse.

The trial court set forth the relevant facts of this case as follows:

Kacie Boeshore testified that the defendant is her ex-husband. They have two children together who were ages six and seven at the time of trial.  On November 12, 2014, from the window of her apartment, Ms. Boeshore observed the defendant pull into the parking lot of her apartment complex at approximately 8:00 p.m. to drop their children off as part of a prearranged custody agreement.  Ms. Boeshore exited her apartment and went to the parking lot to facilitate the transfer of the children.  When she got to the parking lot, she walked toward the defendant's vehicle.  The defendant was outside of his vehicle giving the children a hug and a kiss.  Ms. Boeshore greeted her children

---

[*] Retired Senior Judge assigned to the Superior Court.

and she and the children began to walk toward the apartment. The defendant then said something to Ms. Boeshore but she could not understand exactly what he was saying. She turned and asked him what he had said. She took a few steps back toward his vehicle and stood in front of the vehicle. Her children were four or five feet behind her. The defendant got back into his vehicle, slammed the door and accelerated toward Ms. Boeshore. Ms. Boeshore was a few feet in front of the vehicle. Just as he closed in on her, he quickly turned his vehicle. Ms. Boeshore jumped back[] to avoid being struck. At trial she approximated that his vehicle was as close as a "yardstick worth" to her. As he drove off, the defendant displayed his middle finger to Ms. Boeshore "as he continued squealing out of [the] parking lot". Her children witnessed the entire scene and were upset about it. Officer Good of the Hampton Township Police Department, who responded to the scene, testified that Ms. Boeshore was very upset, scared and concerned for the well-being of herself and her children.

Trial Court Opinion, 5/9/16, at 1-2.

By Criminal Information filed on March 10, 2015, Appellant was charged with recklessly endangering another person[1] and disorderly conduct (obscene language or gesture).[2] Following a bench trial on September 30, 2015, the trial court found Appellant not guilty of recklessly endangering another person, but guilty of disorderly conduct. The trial court imposed a sentence of 90 days' probation, as well as costs. On October 5, 2015, Appellant filed a post-sentence motion, challenging the sufficiency of the evidence for his disorderly conduct conviction. The trial court denied that motion on October 27, 2015. In its opinion issued pursuant to Appellate

_____

[1] 18 Pa.C.S. § 2705.

[2] 18 Pa.C.S. § 5503(a)(3).

Rule 1925(a), the trial court explained that it considered Appellant's gesture obscene because Appellant's children "may well have seen their father's conduct in relation to their mother as explicitly sexual in nature."  Trial Court Opinion, 5/9/16, at 6.

In this appeal, Appellant raises the following issue, as stated:

DOES THE DISPLAY OF A MIDDLE FINGER TO ONE'S EX-SPOUSE DURING AN EXCHANGE OF CUSTODY OF CHILDREN CONSTITUTE AN "OBSCENE GESTURE" UNDER PENNSYLVANIA'S DISORDERLY CONDUCT STATUTE?

Appellant's Brief at 4.

We apply the following standard of review:

When reviewing a sufficiency of the evidence claim, this Court must review the evidence and all reasonable inferences in the light most favorable to the Commonwealth as the verdict winner, and we must determine if the evidence, thus viewed, is sufficient to enable the fact-finder to find every element of the offense beyond a reasonable doubt.

*Commonwealth v. Goins*, 867 A.2d 526, 527 (Pa. Super. 2004).

In this case, Appellant was convicted under 18 Pa.C.S. § 5503(a)(3), which provides:  "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . uses obscene language, or makes an obscene gesture . . . ."  This Court has held that, for purposes of 18 Pa.C.S. § 5503(a)(3), words or gestures are obscene if they meet the following test:

(a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, (b) whether the work depicts or describes, in a patently offensive way, sexual conduct

- 3 -

specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Commonwealth v. Kelly*, 758 A.2d 1284, 1286 (Pa. Super. 2000) (quoting *Commonwealth v. Bryner,* 652 A.2d 909, 912 (Pa. Super. 1995), which quoted *Miller v. California*, 413 U.S. 15 (1973)).

In *Kelly*, a driver who encountered a work area on a highway said "Fuck you" and gave "the finger" to a street department employee. 758 A.2d at 1285. This Court held that for purposes of Section 5503(a)(3), the defendant's expression of the "F-word" and display of his middle finger, used to communicate disrespect, had "nothing to do with sex," and therefore were not obscene. *Id.* at 1288. Similarly, in *Brockway v. Shepherd*, the federal district court for the Middle District of Pennsylvania held that, for purposes of Section 5503(a)(3), displaying the middle finger was not obscene. *See* 942 F. Supp. 1012, 1016-17 (M.D. Pa. 1996) ("[U]sing a base term for sex does not change the disrespectful, offensive communication into one that appeals to the prurient interest. It would be a rare person who would be 'turned on' by the display of a middle finger or the language it represents . . . .").

Here, Appellant argues that his display of his middle finger was not obscene, and that the evidence therefore was insufficient to support his conviction under 18 Pa.C.S. § 5503(a)(3). The Commonwealth concedes that Appellant's gesture was not obscene under Section 5503(a)(3). *See*

Commonwealth's Brief at 10-11. Under the aforesaid caselaw, Appellant is correct.

The trial court held that Appellant's gesture was obscene because his two children witnessed it and "may well have seen their father's conduct in relation to their mother as explicitly sexual in nature." Trial Court Opinion, 5/9/16, at 6. We disagree. Under the **Bryner/Miller** test, the pertinent inquiry in the Section 5503(a)(3) obscenity analysis is not whether any particular person viewed the gesture as explicitly sexual,[3] but "whether 'the average person, applying contemporary community standards' would find that the [gesture] appeals to the prurient interest." **Bryner**, 652 A.2d at 912 (citation omitted); **see Cohen v. California**, 403 U.S. 15, 22 (1971) (First Amendment context, where use of F-word was not obscene, exposure to "unwitting" or "unsuspecting" viewers (women and children) could not justify breach of the peace conviction). Under the **Bryner** test, Appellant's gesture was not obscene, and thus did not violate Pennsylvania's disorderly conduct statute.

Judgment of sentence reversed.

Judge Shogan joins the memorandum.

Judge Strassburger files a concurring statement.

_____

[3] It is doubtful that Appellant's six and seven year-old children perceived his gesture as explicitly sexual.

- 5 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/31/2016</u>