J-S12011-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| E.J. STEWART | : | |
| | : | |
| Appellant | : | No. 1312 MDA 2018 |

Appeal from the Judgement of Sentence entered July 12, 2018
In the Court of Common Pleas of Bradford County Criminal Division at
No(s):  CP-08-CR-0000118-2018

BEFORE:  BOWES, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                           **FILED JUNE 18, 2019**

E.J. Stewart appeals from the aggregate judgment of sentence of one to nine months of imprisonment imposed following his conviction of three counts of the summary offense of disorderly conduct.[1]  We affirm his conviction of two counts of disorderly conduct, reverse the remaining conviction of disorderly conduct, vacate the judgment of sentence, and remand for resentencing.

The trial court provided the following summary of the facts adduced at trial.

---

[1] The crime of disorderly conduct may be graded as either a misdemeanor or summary offense.  If "the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist[,]" the crime is a misdemeanor.  18 Pa.C.S. § 5503(b).

Robert Archer testified that he was residing at Williams Street in Towanda on December 30, 2017[,] in 1 apartment of a 4[-]unit apartment building. He heard an altercation at the top of the common stairwell and a woman was screaming and saying "get out, leave me alone." When he looked, he saw Appellant had just arrived at [the] bottom of [the] stairs. [Mr.] Archer told him to keep it down. Appellant yelled at [Mr.] Archer to mind his own business and he was going to go get a gun out of his truck and shoot him dead. Appellant was very loud and agitated. Appellant then exited the building and was looking through his pickup truck so [Mr.] Archer called the police. [Appellant] continued to yell while outside. [Mr. Archer] heard him curse and use profanities a few times, "I'm going to get the fucking gun and shoot you." A witness, Dr. [Robert] Hansen, was walking by the house at the time and heard several curse words and heard a person in a loud angry voice say "I am going to blow your fucking head off." This alarmed him. [Dr. Hansen] called 9-1-1 and gave the license plate number. He only saw a glimpse of a male getting in a pick-up truck being a dark green vehicle. He gave the license plate number to a police officer. He also heard a little girl say "daddy don't[,]" and the man tell her to get in the car. Officer [Bryan] Bellows interviewed [Mr.] Archer and [Dr.] Hansen. The license plate number taken by [Dr.] Hansen matched Appellant's license plate.

Appellant's 9[-]year[-]old daughter[,] J.S.[,] testified . . . that she was with her mother making a lot of noise slamming doors and her mother was yelling at her. Her mother called Appellant, her father, to pick her up. Appellant picked her up and as they walked by [Mr.] Archer's apartment, he opened [his] door. J.S. claimed that [Mr.] Archer said "I don't want you two black "n" words around – at my apartment again." She then claimed that Appellant said "If you keep on calling people the "n" word around here they will end up shooting you." She further claimed that [Mr.] Archer said to Appellant "Come on big boy, bring it on." She did admit that she said "daddy don't." Bobbi J[.] Noto, J.[S.]'s mother, also testified. She claimed Archer is a maniac, freaking out at them and screaming the "n" word. Appellant also testified consistent with [Ms.] Noto and his daughter. He[,] however[,] added that [Mr.] Archer stood in the doorway to the apartment building "hollering and hollering." He claims he said "if he go around calling people niggers somebody going to shoot his fucking ass."

Trial Court Opinion, 11/15/18, at 1-2.

Appellant was arrested and charged with terroristic threats, harassment and disorderly conduct. Prior to trial, the Commonwealth withdrew the charges for terroristic threats and harassment, and added three additional counts of disorderly conduct. At the conclusion of a non-jury trial on May 24, 2018, the trial court found Appellant guilty of three counts of disorderly conduct under 18 Pa.C.S. § 5503(a)(1), (2), and (3). On July 12, 2018, the trial court sentenced Appellant to ten to thirty days imprisonment on each count, to be served consecutively. Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Appellant raises the following issues for our review:

1. Was the evidence adduced at trial sufficient to establish guilt beyond a reasonable doubt with regard to disorderly conduct based on the elements of fighting or threatening, or violent or tumultuous behavior?

2. Was the evidence adduced at trial sufficient to establish guilt beyond a reasonable doubt with regard to disorderly conduct based on the elements of intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . makes unreasonable noise?

3. Was the evidence adduced at trial sufficient to establish guilt beyond a reasonable doubt with regard to disorderly conduct based on the elements of to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . uses obscene language, or makes an obscene gesture?

Appellant's brief at 5.

In each of his issues, Appellant contends that the evidence was insufficient to support his convictions.

> [O]ur standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. [T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Franklin*, 69 A.3d 719, 722 (Pa.Super. 2013) (citations and quotation marks omitted).

Appellant was charged and convicted of summary disorderly conduct under each of the first three subsections of 18 Pa.C.S. § 5503(a), which provides in relevant part as follows:

> (a) Offense defined.--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or creating a risk thereof, he:
>
> (1) engages in fighting or threatening, or in violent or tumultuous behavior;
>
> (2) makes unreasonable noise; [or]
>
> (3) uses obscene language, or makes an obscene gesture[.]

18 Pa.C.S. § 5503(a)(1), (2), (3).

Regarding his conviction under subsection (a)(1), Appellant baldly contends that "there was contradictory testimony by both the Commonwealth witnesses as to what was said and the time frame" and that "[t]he credible testimony at trial was that of Appellant and his witnesses." Appellant's brief at 11. He additionally claims, without explanation, that Dr. Hansen was not present when the initial exchange between Mr. Archer and Appellant took place.

Post-trial challenges concerning inconsistent testimony go to the credibility of the witness, and hence, implicate the weight, rather than sufficiency of the evidence. *See Commonwealth v. DeJesus*, 860 A.2d 102, 107 (Pa. 2004). Moreover, Appellant failed to raise any challenge to the weight of the evidence in his concise statement or in his statement of questions presented. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) (holding that if an appellant is directed to file a concise statement of matters to be raised on appeal pursuant to Pa.R.A.P. 1925(b), any issues not raised in that statement are waived); *see also* Pa.R.A.P 2116(a) (providing that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"). Therefore, no relief is due on his first issue.

Regarding his conviction under subsection (a)(2), Appellant argues that "the Commonwealth did not produce testimony sufficient evidence [sic] to convict [him] of unreasonable noise." Appellant's brief at 13. While he

concedes that "there was testimony that [he] used foul language," he claims that "mere annoyance to the public is not enough to support an unreasonable noise citation." *Id*. Appellant maintains that there was no testimony that the level of noise was inconsistent with neighborhood tolerance or standards.

> The *mens rea* requirement of § 5503 demands proof that Appellant by his actions intentionally or recklessly created a risk of causing or caused a public inconvenience, annoyance or alarm. The specific intent requirement of this statute may be met by a showing of a reckless disregard of the risk of public inconvenience, annoyance, or alarm, even if the appellant's intent was to send a message to a certain individual, rather than to cause public inconvenience, annoyance, or alarm. In disorderly [conduct] cases based on one's making "unreasonable noise," this Court has looked to language content **only** to infer whether the speaker **intended** to cause public annoyance, alarm, *etc*. Ultimately, however, what constitutes the *actus reus* of "unreasonable noise" under the disorderly conduct statute is determined solely by the **volume of the speech**, not by its content.

*Commonwealth v. Maerz*, 879 A.2d 1267, 1269 (Pa.Super. 2005) (cleaned up, emphasis in original).

Accepting all findings of fact made by the trial court, and viewing such facts and inferences therefrom in a light most favorable to the Commonwealth as verdict winner, we find sufficient evidence to establish that Appellant intended to cause and did, in fact, cause unreasonable noise as proscribed under the disorderly conduct statute. The undisputed fact that Mr. Archer and Dr. Hansen were justifiably upset and alarmed by Appellant's loud and threatening outburst cannot, alone, create the inference that Appellant intended to cause or risk a public inconvenience under the law. However, Mr. Archer testified that, while Appellant was in close proximity in a common area

of the four-unit residence, Appellant yelled at him, and, using profanity, made a serious threat that Appellant would retrieve his "fucking" gun from his truck and kill him. N.T. Trial, 5/24/18, at 4-8. Mr. Archer further testified that, as Appellant went to his truck, he continued to yell profanities and threats while he appeared to be searching for something in it. *Id*. at 6-8. Dr. Hansen testified that, as he was walking through the neighborhood, he heard a raised voice say, "I am going to blow your fucking head off." *Id*. at 23. Appellant's outburst was so alarming that it prompted Dr. Hansen, a complete stranger to the parties, to write down Appellant's license plate number and to seek police intervention. One could reasonably infer from this set of circumstances that Appellant had the requisite intent to upset the public peace.

The public peace was also jeopardized by the actual noise generated by Appellant. Mr. Archer testified that, in threatening him, Appellant "had a raised voice, yelling at me." *Id*. at 5. Mr. Archer further testified that while Appellant was searching his truck, "he was still yelling while he was outside that he was going to shoot me." *Id*. at 6. Mr. Archer could hear the Appellant's continued outburst even though Mr. Archer was in his bedroom with the window shut, and the Appellant was at his truck, which was parked on a public street. *Id*. at 7. Dr. Hansen testified that as he was taking a walk through the neighborhood, he heard a loud, angry, raised voice threatening to kill someone from a nearby intersection. *Id*. at 23, 24. Thus, the evidence sufficiently established that Appellant's vocal noise did, in fact, rise to an

audible level that upset the public peace. Accordingly, no relief is due on Appellant's second issue.

Turning to Appellant's conviction under subsection (a)(3), he argues that there was conflicting testimony as to what precisely was said, and no testimony indicating that his statements or gestures appealed to prurient interests. He claims that "[t]here were no obscene expressions by word or gesture." Appellant's brief at 15. We agree.

In **Commonwealth v. Bryner**, 652 A.2d 909, 912 (Pa.Super. 1995), this Court determined that, with regard to subsection (a)(3), we characterize language as "obscene" if it meets the three-part test set forth in **Miller v. California**, 413 U.S. 15 (1973):

> (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

**Id**. at 24; **see also Commonwealth v. Kelly**, 758 A.2d 1284, 1286 (Pa.Super. 2000) (adopting the **Miller** test in construing § 5503(a)(3)). The **Bryner** Court further noted that the **Miller** test has been adopted by our

legislature in defining what constitutes obscene materials. ***Bryner***, ***supra*** at 912.[2]

With the ***Miller*** definition in mind, even when viewing the evidence in the light most favorable to the Commonwealth, Appellant's usage of the word "fucking," while offensive and abrasive, was not sexually explicit in nature. ***See Commonwealth v. Pennix***, 176 A.3d 340, 346 (Pa.Super. 2017) (holding appellant's remarks of "Fuck you police . . . I don't got time for you fucking police" were not sexually obscene under section 5503(a)(3)); ***see also Kelly***, ***supra*** at 1288 (reversing appellant's conviction under section 5503(a)(3) because "[her] use of the 'F-word' and use of the middle finger were angry words and an angry gesture having nothing to do with sex."). We

_____

[2] The Commonwealth relies on ***Commonwealth v. Pringle***, 450 A.2d 103 (Pa.Super. 1982), wherein this Court affirmed the appellant's conviction under subsection (a)(3) after she repeatedly referred to police officers as "goddamn fucking pigs" when they were attempting to arrest another individual. On appeal, the appellant argued that her words were not obscene, and thus, were protected under the First Amendment. In rejecting her claim, this Court, although recognizing several United States Supreme Court cases dealing with the use of obscene words, distinguished those cases and held that "one may be convicted of disorderly conduct for engaging in the activity of shouting profane names and insults at **police officers** on a public street while the officers attempt to carry out their lawful duties." ***Pringle***, ***supra*** at 106 (emphasis added). In ***Bryner***, this Court distinguished ***Pringle***, noting that "[a]lthough the ***Pringle*** court found that calling police officers 'goddamn fucking pigs' was obscene under this state's disorderly conduct statute, the word 'obscene' was not defined. It is important to define the word 'obscene' because obscenity is not within the area of constitutionally protected speech under the First Amendment." ***Bryner***, ***supra*** at 911.

accordingly reverse Appellant's conviction of disorderly conduct under subsection (a)(3).

Accordingly, we affirm Appellant's convictions under 18 Pa.C.S. § 5503(a)(1) and (a)(2), reverse his conviction under subsection (a)(3), and vacate the sentence imposed for that conviction. However, because vacating Appellant's sentence for subsection (a)(3) may disrupt the trial court's overall sentencing scheme, we vacate his judgment of sentence on all counts and remand for resentencing on the convictions under subsections (a)(1) and (a)(2). *See Commonwealth v. Barton-Martin*, 5 A.3d 363, 370 (Pa.Super. 2010) (providing that where vacating a sentence disrupts a trial court's overall sentencing scheme, this Court will remand to the trial court for resentencing).

Conviction for disorderly conduct under 18 Pa.C.S. § 5503(a)(1) and (a)(2) affirmed; conviction for disorderly conduct under subsection (a)(3) reversed; judgement of sentence vacated; case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/18/2019