778 F.2d 998
 Paula PRINGLE, Appellant,
v.
COURT OF COMMON PLEAS, Cumberland County, Pa. and Edgar
Bayley, District Attorney of Cumberland County,
Pa. and Leroy Zimmerman, Attorney
General of the Commonwealth of Penna.
 No. 85-5249.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 18, 1985.
Decided Dec. 12, 1985.
 
 Thomas M. Place (Argued), Carlisle, Pa., for appellant.
 Leroy S. Zimmerman, Atty. Gen., Kate L. Mershimer (Argued), Deputy Atty. Gen., Andrew S. Gordon, Sr. Deputy Atty. Gen., Allen C. Warshaw, Chief Deputy Atty. Gen., Harrisburg, Pa., for Leroy S. Zimmerman.
 Eric M. Noonan (Argued), Asst. Dist. Atty., Cumberland County, Carlisle, Pa., for Court of Common Pleas and Edgar Bayley.
 Before ADAMS, Acting Chief Judge, HUNTER, Circuit Judge, and FISHER, District Judge*.
 OPINION OF THE COURT
 PER CURIAM.
 
 
 1
 In a habeas corpus petition, appellant challenges her conviction in state court for violation of Pennsylvania's disorderly conduct statute. She argues that the conviction, based solely on her offensive speech addressed to police officers, was an abridgement of her due process and First Amendment rights. We find that her due process contention is controlled by Supreme Court precedent, and on that ground alone will reverse the district court and order that the writ of habeas corpus be issued.
 
 I.
 
 2
 On October 1, 1979, appellant Paula Pringle, then seventeen years old, was arrested by the Shippensburg police and charged with one count of disorderly conduct through use of obscene language. 18 Pa.Cons.Stat.Ann. Sec. 5503(a)(3).[1] The charge arose from Pringle's actions on the night of September 28, 1979. At 10:40 p.m. that night, four police officers were in the process of arresting Tony Neil on a public street; Neil was resisting violently. A crowd of 30 to 50 people gathered, including Pringle, a friend of Neil's. Pringle moved through the crowd, shouting several times, "goddamn fucking pigs," and "fucking pig, let him go."
 
 
 3
 Pringle had no previous record with the Shippensburg police. At trial before the Court of Common Pleas, she testified that she did not remember her exact language, but recalled being upset because she saw police officers kicking Neil and hitting him with a flashlight while he lay handcuffed on the ground.
 
 
 4
 The district magistrate found Pringle guilty and fined her $100. On appeal, a bench trial was held de novo in the Court of Common Pleas; the defendant was found guilty and sentenced to 10 to 30 days in prison. The Superior Court affirmed, deciding that the state statute met constitutional requirements, and that Pringle's speech was obscene, constituted "fighting words" and accordingly was unprotected by the First Amendment. Commonwealth v. Pringle, 304 Pa.Super. 67, 450 A.2d 103 (1982). The state Supreme Court denied allocatur.
 
 
 5
 Pringle filed a petition in federal district court for habeas corpus relief. The district court initially dismissed the petition, since at the time Pringle filed it a separate appeal of her sentence was pending in state court. This Court reversed, Pringle v. Court of Common Pleas, 744 F.2d 297 (3d Cir.1984), and on remand the district court addressed Pringle's constitutional claims. 604 F.Supp. 623 (M.D.Pa.1985).[2] The court upheld the validity of the statute, and held that Pringle's speech was unprotected, relying solely on the fighting words doctrine. It therefore denied the requested relief.
 
 
 6
 Appellant now asserts various constitutional claims before this Court. She insists that the Commonwealth's disorderly conduct statute is overbroad and impermissibly vague, and therefore must be invalidated as an abridgement of First Amendment and due process rights. She also contends that even if there were a valid statutory basis for her conviction, her speech was constitutionally protected and the conviction infringed her First Amendment rights. Because we decide that the statute was vague at the time Pringle acted and was charged in 1979, and the charge and conviction therefore violated essential requirements of due process, we will not address her other constitutional claims.II.
 
 
 7
 Pringle contends that the statutory bar on "obscene" words employed to create a public disturbance was unduly vague. We note initially that Sec. 5503(a)(1), which expressly prohibits "threatening" in public, apparently precludes the use by a citizen of "fighting words." While Pringle may very well have been guilty of uttering "fighting words," see Chaplinsky v. New Hampshire, 315 U.S. 568, 571, 62 S.Ct. 766, 768, 86 L.Ed. 1031 (1942), we are unable to consider that possibility since she was charged only under Sec. 5503(a)(3) and not (a)(1). We therefore address our attention to the former provision.
 
 
 8
 The Supreme Court explained the rationales for and the purpose of the vagueness principle in Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972):
 
 
 9
 It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing a fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to " 'steer far wider of the unlawful zone' ... than if the boundaries of the forbidden areas were clearly marked."
 
 
 10
 Id. at 107-08, 92 S.Ct. at 2298-99 (footnotes omitted) (quoting Baggett v. Bullitt, 377 U.S. 360, 372, 84 S.Ct. 1316, 1322, 12 L.Ed.2d 377 (1964); Cramp v. Board of Public Instruction, 368 U.S. 278, 287, 82 S.Ct. 275, 280, 7 L.Ed.2d 285 (1961)).
 
 
 11
 More recently, in Kolender v. Lawson, 461 U.S. 352, 358, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983), the Supreme Court recognized that the need to provide sufficient guidance to law enforcement officials is the more important practical rationale for the doctrine. The assumption that even the most reasonable citizens are aware of the precise legal consequences of their actions is often based upon a fiction. Nevertheless, there is a constitutional mandate to legislatures to define criminal conduct carefully and specifically and thereby control the actions of those who apply the power of the state. The concept that "reasonable" persons should be aware of criminal prohibitions is therefore a standard used primarily to prevent legislatures from granting excessive decision-making authority to public officials.
 
 
 12
 In this matter, the Pennsylvania Superior Court, the highest state court to pass on the issue, determined that the statute's proscription of "obscene" speech was not overly vague. Recognizing that for purposes of a constitutional challenge a court "must take the statute as though it read precisely as the highest court of the State has interpreted it," Wainwright v. Stone, 414 U.S. 21, 22-23, 94 S.Ct. 190, 192, 38 L.Ed.2d 179 (1973) (per curiam) (quoting Minnesota ex rel. Pearson v. Probate Court, 309 U.S. 270, 273, 60 S.Ct. 523, 525, 84 L.Ed. 744 (1940)), and reasonable persons are assumed to be aware of such constructions, the Superior Court determined that the statute had been limited properly by a Pennsylvania Supreme Court decision. In that case, Commonwealth v. Mastrangelo, 489 Pa. 254, 414 A.2d 54, appeal dismissed, 449 U.S. 894, 101 S.Ct. 259, 66 L.Ed.2d 124 (1980), the court ruled that a different subsection of the Pennsylvania disorderly conduct statute applied only to speech unprotected by the First Amendment.[3] 3] However, we disagree with the Superior Court's contention that the construction by the Pennsylvania Supreme Court ends appellant's due process claim. Even if Mastrangelo saves the entire statute from infirmity for vagueness, an issue we do not address or resolve today, it is irrelevant in a case such as this that arose before Mastrangelo was decided.
 
 
 13
 The first focus of a vagueness analysis must be on the statute as it existed at the time the defendant acted and was charged with commission of a crime. An individual's right to fair notice of criminally proscribed behavior and to uniform application of legal authority is implicated initially at that time. That is the teaching of Rabe v. Washington, 405 U.S. 313, 92 S.Ct. 993, 31 L.Ed.2d 258 (1972) (per curiam), a case that involved a legal problem substantially similar to that presented in this matter.[4]
 
 
 14
 In Rabe, a drive-in theatre manager was arrested and convicted under a state statute prohibiting knowing possession or exhibition of an "obscene" motion picture. In affirming the conviction, the state supreme court did not hold that the film was obscene under then-applicable federal precedent; rather, it found the material obscene in "the context of its exhibition," referring to the drive-in presentation. Id. at 315, 92 S.Ct. at 994 (emphasis in original). The United States Supreme Court struck down the conviction as an abridgement of due process, stressing that "[t]he statute, so construed, is impermissibly vague as applied to petitioner because of its failure to give him fair notice that criminal liability is dependent upon the place where the film is shown." 405 U.S. at 315-16, 92 S.Ct. at 994 (emphasis added). The emphasized language demonstrates that the Supreme Court found it unnecessary to consider whether the statute remained vague or otherwise constitutionally infirm following the state court's interpretation.
 
 
 15
 In this case, therefore, no authoritative state court interpretation of the statute may be applied retroactively to limit the statute under which Pringle was charged. The district court considered no state court decision in analyzing the statute, but held that the plain words of the statute, without any interpretive gloss, would not be vague to a reasonable person or officer. We regretfully must disagree.
 
 
 16
 A responsible citizen or official construing the statute in 1979, the time of Pringle's action, would assume logically that the legislature, in penalizing "obscene" speech, did not intend to infringe First Amendment protections. Thus, that citizen or official would look to United States Supreme Court interpretations of what obscenity is unprotected by the Constitution, and find that in every case in which the Supreme Court was faced with the same offensive word uttered by Pringle it had determined that the term was not obscene. Cf. Hamling v. United States, 418 U.S. 87, 115-16, 94 S.Ct. 2887, 2906-07, 41 L.Ed.2d 590 (1974) (where Supreme Court had construed federal obscenity statute to apply only to material that met constitutional definition of obscenity, provision was not vague).
 
 
 17
 Hess v. Indiana, 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973), is the most relevant decision. In that case, at a public demonstration, "[t]he sheriff heard Hess utter the word 'fuck' in what he later described as a loud voice and immediately arrested him on the disorderly conduct charge." Id. at 107, 94 S.Ct. at 328. The Court held that any contention that this speech was obscene, and therefore could be punished, "would not be tenable." Id.; see also Cohen v. California, 403 U.S. 15, 20, 91 S.Ct. 1780, 1785, 29 L.Ed.2d 284 (1971) (same word printed on jacket was not obscene, as such language must be, "in some significant way, erotic."); Papish v. Board of Curators of the University of Missouri, 410 U.S. 667, 670 & n. 5, 93 S.Ct. 1197, 1199 & n. 5, 35 L.Ed.2d 618 (1973) (per curiam) (student distributed newspaper on campus that included word "M_____ f______" in its headline; held not obscene).
 
 
 18
 Appellees argue that Hess was decided in a different context, and that responsible persons should know that the speech prohibited by Sec. 5503(a)--"obscene" speech that is calculated to create a public disturbance--is also unprotected by the First Amendment. However, in deciding that the term at issue was not obscene, the Hess Court did not consider context at all; indeed, Hess was prosecuted under a quite similar disorderly conduct statute that also imposed a public disturbance requirement, see 414 U.S. at 105 n. 1, 94 S.Ct. at 327 n. 1, but the Court attached no importance to this fact.
 
 
 19
 The Superior Court also attempted to distinguish Hess in its discussion of whether Pringle's speech was obscene within the meaning of the statute, stating: "The holdings in such cases are completely out of context here, where the appellant's crude epithets were directed pointedly at the officers." Commonwealth v. Pringle, 304 Pa.Super. 67, 450 A.2d 103, 106 (1982). The Superior Court adverted to testimony in Hess that the defendant's words were directed to no particular person or group. 414 U.S. at 107, 94 S.Ct. at 328.
 
 
 20
 Even if the Superior Court's view is correct as a matter of First Amendment law, another question we do not answer, the bare words of the statute at issue here gave no notice that whether a word is obscene under the statute would vary with the context of its utterance. Again, Rabe is directly on point. There, the Supreme Court held:
 
 
 21
 To avoid the constitutional vice of vagueness, it is necessary, at a minimum, that a statute give fair notice that certain conduct is proscribed. The statute under which petitioner was prosecuted, however, made no mention that the "context" or location of the exhibition was an element of the offense somehow modifying the word "obscene." Petitioner's conviction was thus affirmed under a statute with a meaning quite different from the one he was charged with violating.
 
 
 22
 Id.; see also Bouie v. City of Columbia, 378 U.S. 347, 353, 84 S.Ct. 1697, 1702, 12 L.Ed.2d 894 (1964) ("an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, Sec. 10, of the Constitution forbids."); Marks v. United States, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). Similarly, no reasonable person or official could know in 1979 that the word in question was not obscene if uttered to cause a public disturbance and directed at no one in particular, as in Hess, but was obscene if spoken to cause a public disturbance and directed at police officers, as in Pringle's case.[5]
 
 
 23
 Further, no authoritative state court case had articulated this gloss on the vague statutory language at issue here. The only relevant Pennsylvania decisions as of 1979 were by lower state courts. Notably, in Commonwealth v. Sampson, 28 Bucks County L.Rep. 48 (Pa.Ct. of Common Pleas 1975), the court held that the term "fucking pigs" directed at police officers was obscene within the meaning of the statute. See also Commonwealth v. Hicks, 3 Pa.D. & C.3d 441 (Pa.Ct. of Common Pleas 1975).[6] But the Supreme Court has held that an authoritative construction of a state statute is one proclaimed only by "a court of statewide jurisdiction, the decisions of which are binding upon all trial courts in the absence of a conflicting decision of the Supreme Court of [the state]." Gooding v. Wilson, 405 U.S. 518, 525 n. 3, 92 S.Ct. 1103, 1107 n. 3, 31 L.Ed.2d 408 (1972). The Court of Common Pleas is not such a court. See Commonwealth v. Nelson, 172 Pa.Super. 125, 92 A.2d 431, 436 (1952) (in Pennsylvania, decisions of lower courts of equal jurisdiction are persuasive but not binding upon one another), rev'd on other grounds, 377 Pa. 58, 104 A.2d 133 (1954), aff'd, 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956); Berkshire Land Co. v. Federal Security Co., 199 F.2d 438, 440-41 (3d Cir.1952) (Courts of Common Pleas and Orphans' Courts are tribunals of limited jurisdiction, and decisions of one may be disregarded by another). Cf. Connecticut Mutual Life Insurance Co. v. Wyman, 718 F.2d 63, 65 (3d Cir.1983) (Pennsylvania Supreme Court is authoritative source of state law; in absence of Supreme Court decision, federal court construing state law looks, but does not give conclusive effect, to decisions of lower courts).[7]
 
 
 24
 In summary, neither the statute nor any authoritative judicial decision gave notice in 1979 that Pringle's words, held to be not constitutionally obscene in earlier Supreme Court decisions, would be found obscene because of their particular context. Therefore, Rabe dictates that the arrest and charge of Pringle for a violation of the statute abridged due process requirements.[8]
 
 III.
 
 25
 It is important to emphasize the narrowness of today's decision. We hold merely that the statute, as applied to Pringle's particular speech in 1979, did not meet constitutional requirements of adequate notice.
 
 
 26
 The Commonwealth, speaking through its Superior Court, has now declared that the words uttered by Pringle, when directed at police officers, fall within the proscription of the statute. Therefore, the due process argument which prevails today will no longer be available to similarly situated defendants whose actions occurred after the 1982 Superior Court decision.
 
 
 27
 We offer no opinion on the other constitutional assertions raised by Pringle, as this Court will not resolve constitutional questions unnecessarily. "The general rule, based upon overriding policy considerations, is to avoid constitutional issues unless essential to the decision of a case." Gavin v. Peoples Natural Gas Co., 613 F.2d 482, 484 (3d Cir.1980).[9]
 
 
 28
 The judgment of the district court will be reversed and the matter will be remanded with instructions to issue the writ of habeas corpus.
 
 
 
 *
 Hon. Clarkson S. Fisher, United States District Court for the District of New Jersey, sitting by designation
 
 
 [1]
 Section 5503 provides:
 (a) Offense defined.--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
 (1) engages in fighting or threatening, or in violent or tumultuous behavior;
 (2) makes unreasonable noise;
 (3) uses obscene language, or makes an obscene gesture; or
 (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.
 (b) Grading.--An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.
 (c) Definition.--As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.
 
 
 [2]
 Though Pringle has been released on her own recognizance since her conviction, this Court held previously that she is "in custody" pursuant to 28 U.S.C. Secs. 2241(c)(3), 2254(a) (1982) and the district court therefore had jurisdiction over her habeas petition. Pringle, 744 F.2d at 300-01. While this decision may appear to be an unwarranted expansion of the statutory provision, it is consistent with the Supreme Court's decision in Hensley v. Municipal Court, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973). See also, Justices of Boston Municipal Court v. Lydon, 466 U.S. 294, 104 S.Ct. 1805, 1809, 80 L.Ed.2d 311 (1984) (opinion of White, J.)
 
 
 [3]
 The case involved Sec. 5503(a)(2), barring use of an "unreasonable noise" to create a public disturbance
 
 
 [4]
 Although Pringle did not cite Rabe, she argued consistently that the state statute is impermissibly vague and that the conviction abridged her due process rights. A habeas petitioner is not required to cite "book and verse on the federal constitution." Picard v. Connor, 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (quoting Daugharty v. Gladden, 257 F.2d 750, 758 (9th Cir.1958)). Pringle notified the state court and the district court of her basic constitutional claim, and did not need to refer to every case supporting her contention. A published Supreme Court decision such as Rabe is "a method of analysis readily available" to these courts when considering a vagueness assertion. Bisaccia v. Attorney General of New Jersey, 623 F.2d 307, 315 (3d Cir.) (Seitz, C.J., concurring), cert. denied, 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980)
 
 
 [5]
 The inherent vagueness of the term "obscene," when construed without reference to judicial decisions, is evident when examining the testimony of the arresting officers in this case. One defined the statutory language as referring to "not ordinary words that an ordinary individual would use;" the other said, "if I can't use it against the public, then I would assume it is obscene...." Such varying answers provide an example of the ad hoc and constitutionally questionable law enforcement that the vagueness principle is designed to prevent. As Justice O'Connor wrote in a recent case, "Although due process does not require 'impossible standards' of clarity, see United States v. Petrillo, 332 U.S. 1, 7-8, 67 S.Ct. 1538, 1541-42, 91 L.Ed. 1877 (1947), this is not a case where further precision in the statutory language is either impossible or impractical." Kolender, 461 U.S. at 360, 103 S.Ct. at 1860
 
 
 [6]
 Commonwealth v. Hughes, 270 Pa.Super. 108, 410 A.2d 1272 (1979), was decided on September 28, 1979, the same day that Pringle acted in Shippensburg. But that decision, concerning "threats and obscenities [shouted] at members of the general public and at police," 410 A.2d at 1274, did not specify the language used, nor which subsection of the disorderly conduct statute was implicated. See Mastrangelo, supra (person who shouted "fucking pig" at meter maid prosecuted successfully under subsection 2 of Sec. 5503(a), which prohibits disturbance of the peace through an "unreasonable noise")
 
 
 [7]
 It should be noted that Sampson and Hicks, supra, held simply that the words were obscene, and did not warn that the context made any difference. Further, their holdings concerning the words directly contradicted Hess, a case neither opinion cited
 
 
 [8]
 The effect of this constitutional interpretation--preventing punishment of Pringle for her 1979 activities in Shippensburg--may not be salutary and may serve no First Amendment purpose. Indeed, noted observers have argued that decisions such as Cohen and Hess go unduly far in protecting offensive speech, and should be reconsidered by the Supreme Court. See, e.g., A. Bickel, The Morality of Consent 72-73 (1975); Rosenfeld v. New Jersey, 408 U.S. 901, 908, 92 S.Ct. 2479, 2482, 33 L.Ed.2d 321 (1972) (Burger, C.J., dissenting). Nevertheless, the decision announced by this Court today constitutes not a First Amendment debate, but rather involves the constitutional mandate that legislatures and authoritative state courts themselves define and give notice of criminal conduct, and not delegate that chore to police officers acting at their own whim in individual cases. This principle is a significant one regardless of what underlying criminal activity is at issue
 
 
 [9]
 These claims--that the statute remains overbroad and vague even after Mastrangelo and Pringle, and that speech such as Pringle's is constitutionally protected under the First Amendment--may be asserted in a later prosecution, where different circumstances may make their resolution more appropriate. In not resolving whether Pringle's speech may be punished consistently with the First Amendment, this decision comports with Rabe. Chief Justice Burger's concurrence in that case is instructive. He wrote separately to stress his view that the drive-in manager's act was not protected by the First Amendment. "That the record shows an offensive nuisance that could properly be prohibited, I have no doubt, but the state statute and charge did not give the notice constitutionally required." 405 U.S. at 317, 92 S.Ct. at 995. Cf. Erznoznik v. City of Jacksonville, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975)