The STATE of Texas, State,

v.

Stephen John HOLCOMBE, Appellee.

No. 2–02–515–CR.

Court of Appeals of Texas,
Fort Worth.

April 22, 2004.

Rehearing Overruled July 15, 2004.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Tanya S. Dohoney and Kim D'Avignon, Asst. Crim. Dist. Attys., Fort Worth, for State.

Stephen Gordon, Fort Worth, for Appellee.

Panel B: DAUPHINOT, HOLMAN, and McCOY, JJ.

## OPINION

DIXON W. HOLMAN, Justice.

The State appeals the trial court's order granting Appellee Stephen John Holcombe's motion to suppress. We reverse and remand.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 19, 2002, at approximately 2:30 a.m., Bedford police officer Joseph Riley and his partner William Mack responded to a call regarding a loud-noise disturbance. According to Riley, the officers were responding for the second time that evening to complaints made about a loud party at a house located on Vicksburg Drive. Riley testified that since it was their second visit to the scene, the officers issued a citation for violating Bedford's noise ordinance, which states:

> The following sounds are hereby determined to be specific noises which can constitute a noise disturbance, and violations of this article are hereby defined. A noise does not have to exceed the specifications for environmental sound levels contained in section 12–53 in order to constitute a violation of this section.
>
> . . . .
>
> (2) *Radios, television sets, musical instruments and similar devices.* Operating or permitting to be operated any radio receiving set, musical instrument, television, phonograph, drum or other machine or device for the production or reproduction of sound in such a manner as to violate the sound levels of this article or to unreasonably disturb or interfere with the peace, comfort and repose of neighboring persons of ordinary sensi-

bilities, unless a permit of variance is first obtained.

BEDFORD, TEX., CODE OF ORDINANCES ch. 54, art. II, § 36 (2002).[1]

After issuing the citation, Riley stated that as he headed back to his patrol car, he noticed Appellee's white Mercedes approximately seventy-five yards away playing loud music. Riley testified that Appellee's music was louder than the noise at the party for which he had just written a citation and that the Bedford noise ordinance is a general noise ordinance that is not specific to residences. Mack testified that he was between one hundred twenty and one hundred fifty feet away from the car and described the music as "extremely" loud. Because the officers were called to the neighborhood in response to a loud noise disturbance call and Riley believed Appellee was violating the Bedford noise ordinance, Riley flagged down the car and asked Appellee to turn down his music. Riley, speaking to Appellee through the sunroof of the car because the other windows were rolled up, noticed a strong odor of an alcoholic beverage and that Appellee's speech was slurred. Riley also testified that Appellee's eyes appeared to be bloodshot. According to Riley, Appellee appeared to be under the influence of alcohol and he intended to keep speaking to him, but Appellee said he was sorry and drove off. Riley radioed ahead to Mack, who was about seventy-five yards down the street and asked him to stop Appellee. Appellee was arrested for driving while intoxicated.

After a hearing on November 21, 2002, the trial court granted Appellee's motion to suppress and announced on the record that the grounds for suppression were that the Bedford noise ordinance is unconstitutional because it is overbroad and does not place the public on sufficient notice. The trial court subsequently adopted the State's proposed order, which stated that the trial court's suppression was based on the fact that the ordinance is overbroad. This appeal ensued.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress evidence will not be set aside absent an abuse of discretion. *Taylor v. State*, 945 S.W.2d 295, 297 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd). We review a trial court's ruling on a motion to suppress using the bifurcated standard of review set forth in *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App.1997). We defer to the trial court's determination of the historical facts and rulings on mixed questions of law and fact. *Id.* at 87–88; *Morfin v. State*, 34 S.W.3d 664, 666 (Tex.App.-San Antonio 2000, no pet.). However, we decide de novo whether the trial court erred in misapplying the law to the facts. *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex.Crim.App.2000); *Morfin*, 34 S.W.3d at 666.

Imprecise laws can be attacked on their faces under two different doctrines. *City of Chicago v. Morales*, 527 U.S. 41, 52, 119 S.Ct. 1849, 1857, 144 L.Ed.2d 67 (1999). First, the overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when

---

1. At the time of Appellant's arrest, a prior version of the Bedford noise ordinance was in effect. The current version, enacted only nine days later, differs only in its references to other "articles" within the ordinance whereas the prior version uses the term "chapters."

For clarity, we will refer to the current version of the Bedford ordinance. *See* BEDFORD, TEX., CODE 1969 § 12–50–12–57 (recodified at BEDFORD, TEX. CODE OF ORDINANCES ch. 54, art. II (2002)).

"judged in relation to the statute's plainly legitimate sweep." *Id.; Broadrick v. Oklahoma,* 413 U.S. 601, 612–15, 93 S.Ct. 2908, 2916–18, 37 L.Ed.2d 830 (1973). Second, even if an enactment does not reach a substantial amount of constitutionally protected conduct, it may be impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests. *Morales,* 527 U.S. at 52, 119 S.Ct. at 1857; *Kolender v. Lawson,* 461 U.S. 352, 358, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).

### OVERBREADTH

■■■ In the State's first four points of error, it argues that the trial court erred in concluding that the Bedford noise ordinance is constitutionally overbroad. It is within the State's police power to protect the tranquility, quiet enjoyment, and well-being of the community. *Frieling v. State,* 67 S.W.3d 462, 472 (Tex.App.-Austin 2002, pet. ref'd). This right of the State is limited only by individual constitutional rights, such as First Amendment free speech. *Blanco v. State,* 761 S.W.2d 38, 40 (Tex. App.-Houston [14th Dist.] 1988, no pet.). Consequently, in analyzing a facial challenge to the overbreadth of a law, we first determine if the statute reaches a substantial amount of constitutionally protected conduct. *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982); *Blanco,* 761 S.W.2d at 40. A statute will not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional applications. *Hoffman,* 455 U.S. at 494, 102 S.Ct. at 1191. Rather, the wide-reaching effects of striking down a statute on its face, at the request of one whose own conduct may be punished despite the First Amendment, has caused the Supreme Court to recognize that the "overbreadth doctrine is

'strong medicine' " and [courts should] employ it "with hesitation, and then 'only as a last resort.' " *New York v. Ferber,* 458 U.S. 747, 769, 102 S.Ct. 3348, 3361, 73 L.Ed.2d 1113 (1982) (quoting *Broadrick,* 413 U.S. at 613, 93 S.Ct. at 2916).

We have reviewed several federal and state cases dealing with the constitutionality of noise ordinances, first turning to the United States Supreme Court's decision in *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). That case involved equal rights protests by black students at a high school in Illinois during the 1960s. *Id.* at 105, 92 S.Ct. at 2297. One of the students, Richard Grayned, was found guilty of violating the city's noise ordinance. *Id.* at 106, 92 S.Ct. at 2298. The Rockford ordinance read:

> No person, while on public or private grounds adjacent to any building in which a school or any class thereof is in session, shall willfully make or assist in the making of any noise or diversion which disturbs or tends to disturb the peace or good order of such school session or class thereof.

*Id.* at 107–08, 92 S.Ct. at 2298. Grayned raised claims of both vagueness and overbreadth to attack his conviction. *Id.* at 108, 114, 92 S.Ct. at 2298, 2302. In holding that the Rockford ordinance was not invalid on its face, the *Grayned* court noted that the city had a compelling interest in preserving "an undisrupted school session conducive to the students' learning." *Id.* at 119, 92 S.Ct. at 2305. The ordinance, although restrictive of expressive behavior during the school session, was not overbroad because:

> Rockford punishes only conduct which disrupts or is about to disrupt normal school activities.... Peaceful picketing which does not interfere with the ordinary functioning of the school is permit-

ted. And the ordinance gives no license to punish anyone because of what he is saying.

*Id.* at 119–20, 92 S.Ct. at 2305. Similarly, the Bedford ordinance restricts only those noises that "unreasonably disturb or interfere with the peace, comfort and repose of neighboring persons of ordinary sensibilities"; it is neutral regarding content and location.

■ In *Ward v. Rock Against Racism,* the Supreme Court upheld New York City's volume control regulations for public outdoor concerts despite clear First Amendment protection for music because the city's interest in tranquility allowed it to impose reasonable restrictions. 491 U.S. 781, 790, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989). According to the *Ward* court, "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.* at 791, 109 S.Ct. at 2754. Under *Ward,* Bedford may impose reasonable restrictions on the time, place, or manner of constitutionally protected speech—even in a public forum. *Id.* at 791, 109 S.Ct. at 2753. A valid time, place, and manner restriction, however, must be content-neutral. *Id.* A restriction is content-neutral so long as it is "justified without reference to the content of the regulated speech." *Id.* (quoting *Clark v. Cmty. for Creative Non Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984)).

Bedford's stated policy is:

to minimize the exposure of citizens to excessive noise and to protect, promote and preserve the public health, comfort, convenience, safety and welfare. It is the express intent of the city to control the level of noise in a manner which promotes commerce; protects the sleep and repose of citizens; promotes the use, value and enjoyment of property; and preserves the quality of the environment.

BEDFORD, TEX., CODE OF ORDINANCES ch. 54, art. II, § 32 (2002). As we previously noted, the Bedford noise ordinance does not reference content. Bedford simply desires to protect the tranquility of its citizens; and it is well established that the government may, within reasonable bounds regulate audible expression in its capacity as noise. *City of Ladue v. Gilleo,* 512 U.S. 43, 48, 114 S.Ct. 2038, 2041, 129 L.Ed.2d 36 (1994) (citing *Ward,* 491 U.S. at 803, 109 S.Ct. at 2760; *Kovacs v. Cooper,* 336 U.S. 77, 89, 69 S.Ct. 448, 455, 93 L.Ed. 513 (1949) (Frankfurter, J., concurring)).

Texas courts have also addressed the constitutionality of noise ordinances. *Thompson v. State,* No. 04–00–00348–CR, 2001 WL 38111, at *2 (Tex.App.-San Antonio Jan.17, 2001, pet. ref'd) (not designated for publication), *cert. denied,* 534 U.S. 1129, 122 S.Ct. 1067, 151 L.Ed.2d 970 (2002) (holding that the Texas unreasonable noise statute does not threaten constitutional conduct); *Schrader v. State,* No. 03–99–00780–CR, 2000 WL 1227866, at *2 (Tex.App.-Austin Aug.31, 2000, no pet.) (not designated for publication), *cert. denied,* 532 U.S. 1040, 121 S.Ct. 2003, 149 L.Ed.2d 1005 (2001) (holding that city noise ordinance does not reach a substantial amount of constitutionally protected conduct); *Blanco,* 761 S.W.2d at 41 (holding that the Texas unreasonable noise statute does not reach a substantial amount of constitutionally protected conduct). In 1988, the Houston Fourteenth Court of Appeals upheld section 42.01(a)(5) of the Texas Penal Code, a disorderly conduct statute, which stated:

A person commits an offense if he intentionally or knowingly ... makes unreasonable noise in a public place or in or

near a private residence that he has no right to occupy.

Act of May 23, 1983, 68th Leg., R.S., ch. 800, § 1, sec. 42.01, 1983 Tex. Gen. Laws 4641, 4641 (amended 1991) (current version at TEX. PENAL CODE ANN. § 42.01(a)(5) (Vernon 2003)); *Blanco,* 761 S.W.2d at 40, 42. The appeals court held that the statute fell within the State's police power to protect the tranquility of the community and that the breadth of the statute did not substantially impact constitutional rights. *Blanco,* 761 S.W.2d at 40.

Appellee argues that the Texas disorderly conduct statute can be distinguished from the Bedford ordinance because the scope of the Texas statute is limited in its encroachment on constitutionally protected conduct by a sister statute, which reads in pertinent part:

> If conduct that would otherwise violate Section 42.01(a)(5) . . . consists of speech or other communication, of gathering with others to hear or observe such speech communication, or of gathering with others to picket or otherwise express in a nonviolent manner a position on social, economic, political, or religious questions, the actor must be ordered to move, disperse, or otherwise remedy the violation prior to his arrest if he has not yet intentionally harmed the interests of others which [42.01(a)(5) ] seek[s] to protect.

TEX. PENAL CODE ANN. § 42.04 (Vernon 2003). According to Appellee, the Texas statute affords adequate safeguards for constitutionally protected conduct, amplified by the specific intent element incorporated into section 42.01, that the Bedford ordinance does not. Consequently, Appellee asserts that *Blanco* cannot be relied upon as precedent for upholding the Bedford ordinance. The court of appeals in *Blanco,* however, noted in its opinion that "[e]ven without the speech defense of § 42.04, courts have held that unreasonable noise is not protected speech." *Blanco,* 761 S.W.2d at 40 (citing *Commonwealth v. Mastrangelo,* 489 Pa. 254, 263, 414 A.2d 54, 58, *appeal dismissed,* 449 U.S. 894, 101 S.Ct. 259, 66 L.Ed.2d 124 (1980); *Reeves v. McConn,* 631 F.2d 377, 378 (5th Cir.1980); *Pringle v. Court of Common Pleas,* 778 F.2d 998, 999 (3rd Cir.1985)).

In 2000, the Austin Court of Appeals, in an unpublished opinion, addressed the constitutionality of Austin's noise ordinance, which provided in relevant part:

> (A) It is unlawful for any person operating or controlling a motor vehicle in either a public or private place within the city to operate any sound amplifier which is part of, or connected to, any radio, stereo receiver, compact disc player, cassette tape player, or other similar device in the motor vehicle, in such a manner that, when operated, it is audible at a distance of thirty (30) feet or, when operated, causes a person to be aware of the vibration accompanying the sound at a distance of thirty (30) feet from the source.
>
> (B) The provisions of this section do not apply to:
>
> . . . .
>
> (2) Motor vehicle[s] used for business or political purposes, properly permitted, which in the normal course of business use sound making devices.

*Schrader,* 2000 WL 1227866, at *1 (quoting AUSTIN, TEX., MUNICIPAL CODE ch. 10–5, art. III, § 10–5–40 (1992)). In that case, Schrader was placed on two years' deferred adjudication after pleading guilty to possession of less than one gram of cocaine, which was discovered as a result of police enforcement of the Austin noise ordinance. The Austin Court of Appeals, recognizing that the question is whether the ordinance reaches a *substantial*

amount of constitutional conduct, declined to strike down the ordinance. *Id.* at *4. The court noted that the ordinance does not restrict any expression or communication beyond limiting its loudness. *Id.* The court reasoned that although the ordinance may restrict some First Amendment activity, the ordinance is justified by the city's interest in a peaceful environment. *Id.*

In 2001, the San Antonio Court of Appeals revisited the constitutionality of the Texas noise ordinance addressed in *Blanco. Thompson*, 2001 WL 38111, at *2. The court reiterated that other courts have held that unreasonable noise is not protected speech and concluded that section 42.01(a)(5) does not threaten constitutional conduct or speech. *Id.* (citing *Blanco*, 761 S.W.2d at 40–41).

We recognize that both *Schrader* and *Thompson* are unpublished and do not constitute binding precedent, but find their reasoning persuasive nonetheless-especially in light of other cases upholding noise ordinances as constitutional. *See Grayned*, 408 U.S. at 119–20, 92 S.Ct. at 2305; *Kovacs*, 336 U.S. at 83, 69 S.Ct. at 451; *Reeves*, 631 F.2d at 382. We therefore conclude that the Bedford noise ordinance does not reach a substantial amount of First Amendment activity and is not constitutionally overbroad. As with the ordinance addressed in *Schrader*, the Bedford noise ordinance is content-neutral and regulates only the volume of expression.

### VAGUENESS

 In the State's fifth and sixth points of error, it argues that the Bedford noise ordinance is not unconstitutionally vague. Although the State recognizes in its brief that the trial court granted Appellee's motion to suppress based only on a finding of overbreadth, the State addresses vagueness based on a case in which both the court of appeals and the court of crimi-

nal appeals considered a vagueness challenge to the penal code even though the trial court's decision turned on the overbreadth challenge. *See State v. Markovich*, 34 S.W.3d 21, 25 n. 2 (Tex.App.-Austin 2000), *aff'd*, 77 S.W.3d 274 (Tex. Crim.App.2002).

 In addition to being limited by free speech protections, Bedford's police power to protect a peaceful environment is further limited by the requirement that a criminal statute must give a person of ordinary intelligence what conduct is prohibited. *See Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972); *Cuellar v. State*, 70 S.W.3d 815, 822 (Tex.Crim.App. 2002) (Cochran, J., concurring); *Morgan v. State*, 557 S.W.2d 512, 514 (Tex.Crim.App. 1977). If a statute does not substantially implicate constitutionally protected conduct or speech, it is valid unless it is impermissibly vague in all applications. *Hoffman Estates*, 455 U.S. at 494–95, 102 S.Ct. at 1191. The vagueness doctrine is based on fairness and "is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." *Colten v. Commonwealth of Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972).

 Vagueness may invalidate a criminal law for either of two independent reasons. First, the law may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement. *See Kolender*, 461 U.S. at 357, 103 S.Ct. at 1858. In order to pass a vagueness challenge, a criminal statute must give a person of ordinary intelligence

a reasonable opportunity to know what is prohibited. *Grayned,* 408 U.S. at 108, 92 S.Ct. at 2298–99; *Long v. State,* 931 S.W.2d 285, 287 (Tex.1996); *Sisk v. State,* 74 S.W.3d 893, 901 (Tex.App.-Fort Worth 2002, no pet.). Furthermore, where First Amendment freedoms are implicated, the law must be sufficiently definite to avoid chilling protected expression. *Long,* 931 S.W.2d at 287; *Sisk,* 74 S.W.3d at 901. A statute is not unconstitutionally vague merely because it fails to define words or phrases. *Engelking v. State,* 750 S.W.2d 213, 215 (Tex.Crim.App.1988); *Ahearn v. State,* 588 S.W.2d 327, 337–38 (Tex.Crim. App. [Panel Op.] 1979). If the statute affects communication protected by the First Amendment, a defendant has standing to challenge the statute as vague on its face, even if it does not affect his own First Amendment rights. *Young v. Am. Mini Theatres, Inc.,* 427 U.S. 50, 59–60, 96 S.Ct. 2440, 2447, 49 L.Ed.2d 310 (1976); *Long,* 931 S.W.2d at 287–88.

Appellee argues that the meaning of the phrase "unreasonably disturbs or interfere with the peace, comfort and repose of neighboring persons of ordinary sensibilities, unless a permit of variance is first obtained," which is included in the ordinance, is left to the imagination of the police, public, and the courts. Specifically, Appellee appears to challenge the terms "persons," "interfere," "repose," and "permit of variance."

Words defined in dictionaries with meanings so well known as to be understood by a person of ordinary intelligence have been held not to be vague and indefinite. *Floyd v. State,* 575 S.W.2d 21, 23 (Tex.Crim.App. [Panel, Op.] 1978), *appeal dism'd,* 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979); *Ex parte Anderson,* 902 S.W.2d 695, 700 (Tex.App.-Austin 1995, pet. ref'd). What we must do, then, is "to find the meaning of some not very difficult words." *N. Sec. Co. v. United States,* 193 U.S. 197, 401, 24 S.Ct. 436, 468, 48 L.Ed. 679 (1904) (Holmes, J., dissenting). First, "person" is defined by section 54–31 of the Bedford municipal code as "any individual, firm, association, partnership, corporation or any other entity, public or private." BEDFORD, TEX., CODE OF ORDINANCES ch. 54., art. II, § 31 (2002). This definition is more than sufficiently clear to place a person of ordinary intelligence on notice of whose comfort and repose may not be unreasonably disturbed. Further, the term "persons" is limited to only those persons of ordinary sensibilities, i.e., an objective reasonable person standard.

As recognized by other Texas courts, the terms "interfere" and "repose" also have commonly understood meanings. *Ex parte Hunter,* 148 Tex.Crim. 462, 188 S.W.2d 162, 163 (1945) (stating, "We are unable to sustain the relator's contention that the ordinance is indefinite in that it does not define what is meant by 'frequent or long continued noise,' 'comfort and repose,' and 'neighborhood.' Such terms are of general use and may be understood.") (orig.proceeding); *Markovich,* 34 S.W.3d at 25 (stating that term "interfere" has a commonly understood meaning); *Morehead v. State,* 746 S.W.2d 830, 837 (Tex. App.-Dallas 1988), *rev'd on other grounds,* 807 S.W.2d 577 (Tex.Crim.App.1991) (holding that term "interfere" in statute prohibiting the disruption of a lawful meeting was not vague); *Winthrop v. State,* 735 S.W.2d 545, 547 (Tex.App.-Houston [1st Dist.] 1987, pet. ref'd) (stating term "interfere" in child enticing statute was not so vague as to violate state and federal due process provisions).

Finally, Appellee argues that the ordinance is unclear as to the criteria for obtaining a "permit of variance." The Bedford municipal code, however, extensively describes the process and criteria

for obtaining a permit of variance. BED-FORD, TEX., CODE OF ORDINANCES ch. 54, art. II, § 38 (2002). For example, section 54–38 of the code authorizes the city manager to grant permits if it is found:

a. That additional time is necessary for the applicant to alter or modify the activity or operation to comply with this article; or

b. That the activity, operation or noise source will be of temporary duration and cannot be done in a manner that would comply with other provisions of this article; and

c. That no other reasonable alternative is available to the applicant; and

d. That the city may prescribe any conditions or requirements deemed necessary to minimize adverse effects upon the community or the surrounding neighborhood.

*Id.*

Appellee additionally argues that the Bedford noise ordinance contains no specific and objective criteria for determining if any particular noise was too loud. We disagree. The ordinance's reference to "neighboring persons of ordinary sensibilities" and ban against noise that is unreasonable establish an objective reasonable person standard. This objective standard ensures that those of ordinary intelligence have a reasonable opportunity to know what is prohibited. We conclude that the Bedford noise ordinance adequately describes the prohibited conduct and does not permit arbitrary or discriminatory en-forcement. We sustain the State's fifth and sixth points of error.

### THE REASONABLENESS OF THE STOP

In the State's seventh and final point of error, it argues that the trial court erred in granting the motion to suppress because the stop of Appellee's vehicle was reasonable. Because we sustain the State's over-breadth and vagueness points, we do not address the State's seventh point. *See* TEX.R.APP.P. 47.1.

### CONCLUSION

Having sustained Appellant's first six points, we reverse the trial court's judgment and remand this case for a trial on the merits.

DAUPHINOT, J. filed a dissenting opinion.

LEE ANN DAUPHINOT, Justice, dissenting.

Although the majority opinion is thoughtfully and carefully researched and written, I must respectfully dissent because the majority writes to reverse the well-founded decision of the trial judge.

In reviewing the trial judge's ruling, we apply a de novo standard of review as to questions of law and afford almost total deference to the trial judge's determination of facts.[1] Moreover, if the trial court's ruling on a matter of law is correct under any theory of law, even if the trial court gives the wrong reason for its ruling, we must affirm the trial court's decision.[2]

In *May v. State*,[3] the Texas Court of Criminal Appeals held that former section

---

1. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim.App.1997).

2. *Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim.App.1990); *Couchman v. State,* 3 S.W.3d 155, 158 (Tex.App.-Fort Worth1999, pet. ref'd); *Pettigrew v. State,* 908 S.W.2d 563, 568 (Tex.App.-Fort Worth 1995, pet. ref'd); *see also In re ExxonMobil Corp.,* 97 S.W.3d 353, 365 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding); *Luxenberg v. Marshall,* 835 S.W.2d 136, 141–42 (Tex.App.-Dallas 1992, orig. proceeding).

3. 765 S.W.2d 438, 440 (Tex.Crim.App.1989) (op. on reh'g).

42.07 of the Texas Penal Code, prior to its amendment in 1983, was unconstitutional. As the *May* opinion provides, that former statute read, in pertinent part:

> (a) A person commits an offense if he intentionally:
>
> . . .
>
> (2) threatens, by telephone or in writing, to take unlawful action against any person and by this action intentionally, knowingly, or recklessly annoys or alarms the recipient or intends to annoy or alarm the recipient; or
>
> (3) places one or more telephone calls anonymously, at an unreasonable hour, in an offensive and repetitious manner, or without a legitimate purpose of communication and by this action intentionally, knowingly, or recklessly annoys or alarms the recipient.[4]

The *May* Court, citing *Kramer v. State*,[5] concluded that the statute was void for vagueness because of its failure to 1) adequately define what annoys and alarms people and 2) specify whose sensitivities must be offended.[6]

The ordinance now before us provides in pertinent part that a "noise disturbance" is

> [o]perating or permitting to be operated any radio . . . in such a manner as to violate the sound levels of this article or to unreasonably disturb or interfere with the peace, comfort and repose of neighboring persons of ordinary sensibilities, unless a permit of variance is first obtained.[7]

The Bedford police officers variously described the music from Appellee's radio as "so loud," played at an extremely high level," and louder than the noise at the party. The officer who stopped Appellee's car said he stopped Appellee because he believed that Appellee was violating the Bedford noise ordinance.

Our sister court in Houston has pointed out:

> All criminal laws must give fair notice to the populace as to what activity is made criminal so that individuals have fair warning of what is forbidden. Criminal statutes must provide an objective standard by which a person's conduct can be measured. A statute which forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. To determine whether a law provides fair notice requires a two-step process. First, we must determine whether appellant, as an ordinary person, received sufficient information from the statute to understand exactly what conduct is prohibited so that she could act in a lawful manner. Second, we must determine whether [the law] provides sufficient notice of the prohibited conduct to law enforcement personnel, so that appellant is not arbitrarily or discriminatorily prosecuted by the State or convicted by the jury.[8]

The standard for determining the vagueness issue was established in *City of Jacksonville*, in which the United States Supreme Court held that a statute is void for vagueness when it fails to give a person of

---

**4.** *Id.* at 439.

**5.** 605 S.W.2d 861 (Tex.Crim.App. [Panel Op.] 1980).

**6.** *May*, 765 S.W.2d at 440.

**7.** BEDFORD, TEX., CODE 1969 § 12–55 (recodified at BEDFORD, TEX., CODE OF ORDINANCES ch. 54, art. II, § 36 (2002)).

**8.** *Weyandt v. State*, 35 S.W.3d 144, 155 (Tex. App.-Houston [14th Dist.] 2000, no pet.) (citations omitted).

ordinary intelligence fair notice that his contemplated conduct is forbidden, it encourages arbitrary and erratic arrests and convictions, makes criminal those activities which by modern standards are normally innocent, and places almost unfettered discretion in the hands of the police.[9]

In the case now before this court, the trial judge announced that the ordinance in question is unconstitutionally overbroad and void for vagueness. The findings of fact and conclusions of law that appear in the record address only the overbreadth holding. It is clear from reading the record as a whole that the trial judge was concerned that the ordinance was actually unconstitutionally vague for its failure to afford fair notice of the prohibited conduct and its failure to establish objective standards for determining whether a violation has occurred. The consequence of such failures is to leave to the police officers the unbridled discretion to judge whether a violation of the ordinance has occurred. We cannot tell from the record how loudly the radio was playing, except that it was so loud, played at an extremely high level, or could be heard at a particular distance. An ordinance that prohibits noise above a certain decibel level or that can be heard at a specific distance under specific circumstances provides objective standards. The Bedford ordinance does not. Whether a violation of the Bedford ordinance occurs depends only on the police officers' determination of what is too loud and what unreasonably disturbs or interferes with the peace, comfort, and repose of neighboring persons. Indeed, in the case before us, the police officers alone determined who were "neighboring persons."

The Bedford ordinance appears to be constitutionally infirm for the very reasons

the Texas Court of Criminal Appeals held the telephone harassment statute void for vagueness in *May,* and for similar reasons supporting the Supreme Court's holding in *City of Jacksonville.* I would hold that the trial court did not err in declaring the Bedford ordinance unconstitutional and granting Appellee's motion to suppress. Because the majority holds that the trial court did err, I must respectfully dissent.

---

9. *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162–71, 92 S.Ct. 839, 843–48, 31 L.Ed.2d 110 (1972).