J-S51028-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT W. KORTMAN, | |
| Appellant | No. 40 MDA 2014 |

Appeal from the Judgment of Sentence December 5, 2013
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0001970-2013

BEFORE:  BOWES, OTT, and MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.*:                      **FILED MAY 14, 2015**

Robert W. Kortman appeals from the aggregate judgment of sentence of one to four years imprisonment imposed by the trial court after a jury found him guilty of recklessly endangering another person ("REAP"), resisting arrest, disorderly conduct, and harassment.  After careful review, we reverse.

Pursuant to a court order, Appellant was to meet with his former paramour in the West Reading Borough building parking lot to exchange physical custody of their child.  Accordingly, on April 19, 2012, at approximately 6:30 p.m., Appellant was waiting for his ex-girlfriend to arrive.  At the time, Appellant had already been waiting for approximately one-half hour and, ultimately, his former girlfriend never arrived.

* This case was reassigned to this author on March 9, 2015.

West Reading Police Sergeant Keith Phillips, who was not on duty, and was not in uniform, observed Appellant seated in his own vehicle in the parking lot. Sergeant Phillips approached Appellant, identified himself as a police officer, and questioned Appellant as to both his identity and presence. Appellant refused to speak with Sergeant Phillips and called 911 to report an individual claiming to be a police officer who would not produce a badge. Although Sergeant Phillips was not in uniform and did not display a badge, he was wearing a shirt with a police badge embroidered on it, which also said, "West Reading Police Department" on the left sleeve. The 911 operator instructed Appellant to get the individual's license plate number. Accordingly, Appellant proceeded to attempt to photograph the license plate of Sergeant Phillip's civilian vehicle, a pickup truck.

Dissatisfied that Appellant would not answer his queries, Sergeant Phillips called for uniformed police to respond. Officer Marc Oxenford, in full uniform, then arrived on the scene in a marked police cruiser. Officer Oxenford attempted to question Appellant, who was still on the telephone with the 911 operator. Sergeant Phillips also pulled his pickup truck toward the rear of Appellant's car, but not directly behind it. In addition, a third police officer arrived. Officer Edward DeLozier, Jr., in full uniform, drove his police vehicle directly in front of Appellant's car and parked it three to five

feet from the front of Appellant's vehicle. According to Officer DeLozier, it appeared that Appellant was arguing with the two other officers.

Police continued to attempt to question Appellant and demanded that he exit his vehicle. When Appellant continued to disregard police questioning, Officer DeLozier placed his right foot inside the front driver's side door area of Appellant's car in order to reach inside and seize Appellant's keys. As he did so, Appellant's car, which had a manual transmission, stalled out and lurched forward. When this occurred, Officer Oxenford was to the rear of the car on the driver's side. Officer DeLozier and Officer Oxenford stepped further away from the vehicle, and thereafter Officer DeLozier told Appellant that he was placing him under arrest. Officer DeLozier then reached into the vehicle and grabbed Appellant. Appellant leaned back and shed Officer DeLozier's hold. Officer DeLozier then pulled Appellant partially from the car. As he did so, Appellant placed his foot on the ground and braced himself against being pulled further. Officer DeLozier continued to pull Appellant to the ground and, with the aid of Officer Oxenford, handcuffed him. While police attempted to handcuff Appellant, he tried to move his hands to the front of his body.

After securing Appellant, the police placed him in the back of Officer DeLozier's police vehicle, at which point Appellant asked why he was being arrested and asserted that the police were "going to take him to prison, strip

him, abuse him, and rape him." N.T., 11/19/13, at 130. The Commonwealth charged Appellant with REAP, resisting arrest, and two counts each of disorderly conduct and harassment. Appellant proceeded to a jury trial. The jury acquitted Appellant of one disorderly conduct and harassment charge and found Appellant guilty of the remaining offenses. The court sentenced Appellant to the aforementioned sentence. This timely appeal ensued. The trial court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the trial court authored its Rule 1925(a) opinion. The matter is now ready for our review.

Appellant presents the following seven sufficiency of the evidence claims for this Court's consideration.

1. Whether the evidence presented was sufficient as a matter of law to support Appellant's conviction for Recklessly Endangering Another Person, 18 Pa.C.S.A. § 2705, as it was not established that Appellant placed or may have placed either Officer Edward DeLozier or Officer Marc Oxenford in danger of death or serious bodily injury where neither officer was in a position to be struck by Appellant's vehicle in any manner?

2. Whether the evidence presented was sufficient as a matter of law to support Appellant's conviction for Recklessly Endangering Another Person, 18 Pa.C.S.A. § 2705, as it was not established that Appellant consciously ignored a great and unjustifiable risk that his actions would cause either Officer Edward DeLozier or Officer Marc Oxenford to be seriously injured where the risk of injury was so serious that Appellant's actions were a gross deviation from the standard of conduct that a reasonable person in his situation would have followed where Appellant simply

removed his foot from the clutch, causing his car to stall and lurch forward a minimal distance?

3. Whether the evidence presented was sufficient as a matter of law to support Appellant's conviction for Resisting Arrest, 18 Pa.C.S.A. § 5104, as it was not established that Appellant resisted a lawful arrest by means justifying or requiring substantial force to overcome his resistance where he merely argued and/or scuffled with the officers?

4. Whether the evidence presented was sufficient as a matter of law to support Appellant's conviction for Disorderly Conduct, 18 Pa.C.S.A. § 5503(a)(1), as it was not established that Appellant engaged in fighting, threatening, violent, or tumultuous behavior directed at producing or inciting imminent lawless actions or immediate violent response where Appellant merely argued with the officers and voiced his concern over being arrested and imprisoned?

5. Whether the evidence presented was sufficient as a matter of law to support Appellant's conviction for Disorderly Conduct, 18 Pa.C.S.A. § 5503(a)(1), as it was not established that Appellant argued with the officers and voiced his concerns over being arrested and imprisoned with the intent to cause either substantial harm to the public by way of annoyance or alarm or serious public inconvenience?

6. Whether the evidence presented was sufficient as a matter of law to support Appellant's conviction for Harassment, 18 Pa.C.S.A. § 2709(a)(4), as it was not established that Appellant communicated to Officer DeLozier or Officer Oxenford any words or language that the average person would find lewd, lascivious, threatening, or obscene where Appellant voiced his concerns over being arrested and imprisoned?

7. Whether the evidence presented was sufficient as a matter of law to support Appellant's conviction for Harassment, 18 Pa.C.S.A. § 2709(a)(4), as it was not established that Appellant communicated to Officer DeLozier or Officer Oxenford any lewd, lascivious, threatening, or obscene words or language with the

intent to annoy, harass, or alarm Officer DeLozier or Officer Oxenford but rather that Appellant merely voiced his concerns over being arrested and imprisoned?

Appellant's brief at 4-5.

In conducting a sufficiency of the evidence review, we view all of the evidence admitted, even improperly admitted evidence. *Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa.Super. 2013) (*en banc*). We consider such evidence in a light most favorable to the Commonwealth as the verdict winner, drawing all reasonable inferences from the evidence in favor of the Commonwealth. *Id*. When evidence exists to allow the fact-finder to determine beyond a reasonable doubt each element of the crimes charged, the sufficiency claim will fail. *Id*.

The evidence "need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." *Id*. In addition, the Commonwealth can prove its case by circumstantial evidence. Where "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances[,]" a defendant is entitled to relief. *Id*. This Court is not permitted "to re-weigh the evidence and substitute our judgment for that of the fact-finder." *Id.*

Appellant's first two sufficiency claims pertain to his REAP charge. Appellant argues that "given the positions of all of the police officers, it

- 6 -

would have been impossible for the vehicle to make even the most minor contacts with any of [their] bod[ies] unless the law of physics were suspended and the vehicle had somehow lurched sideways." Appellant's brief at 12 (emphasis removed). The question here is whether Appellant's action of starting his car and putting it in gear before it stalled out, thereby causing the car to lurch forward, recklessly put either Officer DeLozier or Officer Oxenford in danger of death or serious bodily injury. We find that the evidence presented by the officers does not prove that Appellant recklessly placed or may have placed the officers in danger of death or serious bodily injury. *See* 18 Pa.C.S. § 2705 (person must recklessly engage "in conduct which places or may place another person in danger of death or serious bodily injury.").

There is no dispute that the officers were not in danger of death. Thus, we focus on whether Appellant's conduct was criminally reckless and if the officers were in danger of serious bodily injury. The Crimes Code defines criminal recklessness as follows.

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(3).

In addition, serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. The danger to the officers, according to their own testimony, is that Appellant could have driven over them or run over their feet. Viewing the evidence in a light most favorable to the Commonwealth, the consistent and repeated testimony by the officers was that the car lurched forward by stalling out. This occurs in a manual transmission vehicle when the vehicle is in gear and a person removes his or her foot from the clutch too quickly without pressing the gas pedal adequately.

Hence, the evidence establishes that the car lurched and stalled because Appellant's car was on and in gear and his foot was no longer on the clutch. There is no evidence that the engine was revved and Appellant pressed the gas pedal. Appellant's conduct, therefore, was to cause his car to lurch forward one time, not drive the vehicle. The evidence to infer that Appellant intended to drive away is that he turned his vehicle on and it was in gear. However, the fact that Appellant's car stalled out because he did not press the gas pedal while releasing the clutch conclusively demonstrates that he was not attempting to drive; thus, any such inference that he would

drive away is not reasonable.[1]  Indeed, the evidence at trial was undisputed that a police vehicle pulled directly in front of Appellant's car in an attempt to block him in his space.  Specifically, Appellant had backed into a parking spot.  A cement parking block was located behind Appellant's car and he never attempted to drive backward.  Officer DeLozier pulled his police sport utility vehicle three to five feet directly in front of Appellant's car, with the two vehicles forming a t-shape.  Appellant could not have driven forward more than five feet, and in fact did not drive forward.  Based on the testimony, Appellant would had to have sharply turned his vehicle's wheels to the right to even attempt to exit.  There is no testimony to that effect.

Officer Oxenford testified that he did not see the cars wheels move.  However, Officer DeLozier, who had his right foot in the front driver's side door area so as to remove Appellant's keys, did state that the car moved approximately three feet forward when it stalled.  Thus, considering the evidence in a light most favorable to the Commonwealth, we infer that the wheels moved.  Nonetheless, the vehicle lurching forward, at most three feet but obviously less than five feet, would not have put any of the officers in danger of serious bodily injury.  The back wheels of Appellant's car were

---

[1] We are aware that beginners learning to drive a manual transmission do stall out when attempting to drive.  There is absolutely no evidence to infer that Appellant was learning how to drive a manual transmission.

more than three feet from Officer DeLozier's feet, which according to his own testimony were by the front of the front door of Appellant's car. Thus, there is no probability that the car's momentary lurch placed the officer in danger of serious bodily injury. Nor is it a reasonable inference based on the evidence that Appellant acted in a criminally reckless fashion by removing his foot from the clutch of his vehicle when police were reaching inside his car to turn it off. We therefore reverse Appellant's conviction for REAP.[2]

_____

[2] The learned dissent erroneously infers that we have suggested that expert testimony was needed to determine that "having one's feet run over by a car" could lead to serious injury. Dissent, at 8. Nowhere have we suggested or implied that expert testimony is necessary. Frankly, having one's foot run over can result in serious bodily injury. What we have held is that based on each of the officers' testimony, it was not possible for their feet to get run over when the car stalled. Equally important, there is insufficient evidence that Appellant had the requisite criminal intent. The dissent appears to believe that the mere starting of the car and placing it in gear caused the officers to be in danger of serious bodily injury or showed an intent to seriously harm the officers. *See id*. at n.7. That position is untenable. Indeed, unless police had probable cause or reasonable suspicion to have detained him, Appellant should have been free to go.

Pointedly, the actions of the police in this matter prior to the car stalling out likely constituted an unlawful investigative detention. No person would feel free to leave with three armed officers on the scene, a police SUV parked directly in front of the car so as to prevent easy egress, and other police cars preventing an exit to the left without sideswiping a police vehicle. Further, one officer was trying to take Appellant's keys before Appellant's car lurched, which was the reason for the officer having one foot inside the car. There was no evidence of criminal activity on Appellant's part and he should have been free to leave. While before the arrival of uniformed police, Appellant did call 911 to complain of another officer who would not display

*(Footnote Continued Next Page)*

- 10 -

Appellant also challenges the sufficiency of the evidence relative to his resisting arrest conviction. To be found guilty of resisting arrest, the Commonwealth must prove that the individual, "with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S. § 5104.[3] Running away, arguing with,

_(Footnote Continued)_ _____

his badge, this was not a mere encounter nor were the police assisting Appellant.

[3] Under modern Pennsylvania law, one has no right to resist arrest, even if the arrest is unlawful. **See Commonwealth v. Biagini**, 655 A.2d 492 (Pa. 1995); 18 Pa.C.S. § 505(b)(1)(i). This was a change in the common law that dated to the early days of the American republic. **See** Andrew P. Wright, _Resisting Unlawful Arrests: Inviting Anarchy or Protecting Individual Freedom?_, 46 Drake L.Rev. 383 (1997). The United States Supreme Court in **John Bad Elk v. U.S.**, 177 U.S. 529, 535 (1900), outlined that at common law, "If the officer had no right to arrest, the other party might resist the illegal attempt to arrest him, using no more force than was absolutely necessary to repel the assault constituting the attempt to arrest." The United States Supreme Court also recognized in **Wolf v. Colorado**, 338 U.S. 25 (1949), _overruled in part on other ground_, **Mapp v. Ohio**, 367 U.S. 643 (1961), that "One may also without liability use force to resist an unlawful search." **Wolf**, **supra** at 33 n.1 (citing **Commonwealth v. Martin**, 105 Mass. 178 (1870); **State v. Mann**, 27 N.C. 45 (1844)); **cf. State v. Curtis**, 2 N.C. 471 (1797) ("as the officer did not tell Curtis for what he arrested him, and the warrant he had was not under seal, Curtis who resisted, and beat him for making the arrest, was acquitted."); **Coyle v. Hurtin**, 10 John 85 (N.Y. 1813); **State v. Worley**, 33 N.C. 242, 243 (1850) ("a seal is essential to every warrant, issued by a magistrate to arrest any person upon a criminal charge. If there be no seal, the precept is void and affords no protection to the officer attempting to execute it; and, if its

_(Footnote Continued Next Page)_

or minor scuffling with police is insufficient. *See Commonwealth v. Miller*, 475 A.2d 145 (Pa.Super. 1984) (fleeing from police alone is not resisting arrest); Comment to 18 Pa.C.S. § 5104 ("This section changes existing law somewhat by not extending to minor scuffling which occasionally takes place during an arrest."); *Commonwealth v. Rainey*, 426 A.2d 1148 (Pa.Super. 1981).[4]

In *Rainey*, an inebriated Rainey believed he had entered his friend's apartment and used the bathroom therein. However, his friend had moved and no longer resided at the apartment. Rainey then passed out on the floor of the apartment. The resident of the apartment above telephoned police

*(Footnote Continued)* _____

execution is resisted by the defendant, he is guilty of no offence against the law, though, in doing so, the person of the officer be assaulted."); *State v. Crocker*, 1874 Del. LEXIS 16.

[4] The resisting arrest statute is "derived from" the Model Penal Code. Comment to 18 Pa.C.S. § 5104. The comment to the Model Penal Code provision reads in relevant part,

> This provision covers a person who, for the purpose of preventing a lawful arrest, "creates a substantial risk of bodily injury" or "employs means justifying or requiring substantial force to overcome the resistance." **This language exempts from liability nonviolent refusal to submit to arrest and such minor acts of resistance** as running from a policeman or **trying to shake free of his grasp**. The policy judgment underlying this curtailment of coverage is that authorizing criminal punishment for every trivial act of resistance would invite abusive prosecution.

Comment to Model Penal Code § 242.2 (emphases added).

after hearing the toilet flush. Police responded and awakened Rainey to place him under arrest. Rainey attempted to leave but was restrained by the officer. A second officer then entered the apartment and placed Rainey against a wall and frisked him. That officer then transported the appellant to a police van. Upon reaching the police vehicle, Rainey attempted to flee. The officer grabbed Rainey and Rainey "began to shake himself violently, to wiggle and squirm in an attempt to free himself of the officer's grasp." **Rainey**, **supra** at 1149.

A third officer arrived and struck Rainey in the head with a nightstick. Rainey continued to struggle, and one officer began to choke Rainey in an attempt to subdue him, but relented when Rainey could not breathe. The original officer who responded, and who had been interviewing the person who called police, returned to aid his fellow officers. The three officers were then able to handcuff Rainey. At trial, the testimony was that Rainey "merely attempted to squirm, wiggle, twist and shake his way free of their grasp." **Id**. This Court found insufficient evidence to find Rainey guilty of resisting arrest.

In contrast, in **Commonwealth v. Lyons**, 555 A.2d 920 (Pa.Super. 1989), deputy sheriffs attempted to arrest the defendant. Lyons, in an attempt to elude capture, "ran into the middle of Lycoming Creek and attempted to swim downstream with the current." **Lyons**, **supra** at 925.

The temperature of the creek was frigid and it "had a slippery streambed and a swift current." *Id*. Two deputy sheriffs pursued Lyons into the creek. One deputy sheriff, "after three unsuccessful attempts, managed to get a grip of [Lyons] *who was kicking and struggling to get away.*" *Id*. (italics in original). Two officers then secured Lyons, but he "went limp, pulled his feet underneath him, refused to walk, and became rigid." *Id*. Thus, the sheriffs had to carry him.

This Court opined that resisting arrest "does not require serious bodily injury. Nor does it require actual injury to the arresting officer." *Id*. The panel set forth that sufficient evidence of resisting arrest may exist where "the arrestee's actions created a substantial risk of bodily injury to the arresting officer." *Id*. The **Lyons** Court held that Lyons' "struggle with the two deputies in the middle of a frigid stream with a rocky uneven bed was sufficient to meet that requirement." *Id*. It added that the resisting arrest statute "includes the disjunctive phrase 'or employs means justifying or requiring substantial force to overcome resistance.' [Lyons'] actions unquestionably fall within the ambit of this portion of the statute. It took four deputy sheriffs to finally subdue appellant. Substantial force was thus required to overcome appellant's resistance to the arrest."

In **Commonwealth v. Butler**, 512 A.2d 667 (Pa.Super. 1986), the defendant snatched four gold chains from a woman's neck in broad daylight

- 14 -

and knocked her to the ground. The victim's friend, who witnessed the robbery, screamed. A young man responded to the cry and gave chase. The victim and her friend then flagged down a police officer. The young male who chased Butler returned and informed the officer that the assailant was hiding behind a wall one block away. The officer went to that area, cornered Butler, and instructed him not to move. Butler, however, punched the officer and attempted to flee. Several other officers had to subdue the defendant. The *Butler* Court reasoned that, because "it took the assistance of other officers to subdue [Butler,]" and the officer testified that he was punched, the Commonwealth presented sufficient evidence of resisting arrest.

In both *Lyons* and *Butler*, the defendant exercised more force and resistance than at issue here. Assuming that the totality of the circumstances warranted Appellant's arrest after the car lurched forward, Appellant did not create a substantial risk of bodily injury or resist by means justifying or requiring substantial force to subdue him. Instantly, Appellant "pulled away" from police by planting his foot "down on the ground to brace himself from being taken out of the car[,]" and moving his body toward the passenger seat. N.T., 11/19/13, at 108, 109. He attempted to stand up after being taken to the ground, but was pushed down. When he was removed from the car, "he was trying to put his hands in front of him. He

- 15 -

wasn't actually complying by putting his hands behind his back." N.T., 11/20/13, at 140. None of these actions rises to the level of creating a substantial risk of bodily injury. *See Commonwealth v. Eberhardt*, 450 A.2d 651 (Pa.Super. 1982). Further, they did not require substantial force to overcome them.

We recognize that the resisting arrest statute "does not require the aggressive use of force such as striking or kicking of the officer." *Miller*, *supra* at 146; *Commonwealth v. McDonald*, 17 A.3d 1282, 1285 (Pa.Super. 2011) (quoting *Miller*, *supra*). However, it does mandate that the forcible resistance used by the defendant involves some substantial danger to the officer. *Miller*, *supra* at 146. In this case, there is no evidence that Appellant punched, struck, kicked, spit upon, shoved, used his shoulders to strike, fled, or exerted an amount of force justifying or requiring substantial force to place him in handcuffs. *Compare Commonwealth v. Franklin*, 69 A.3d 719 (Pa.Super. 2013) (defendant's swinging of his fists at police and continually yanking his arms away from officer constituted violent and tumultuous behavior); *McDonald*, *supra* (resistance by defendant required deployment of taser); *Commonwealth v. Coleman*, 19 A.3d 1111, 1118 (Pa.Super. 2011) (where officer had reasonable suspicion to conduct an investigative detention, the defendant's actions of struggling with the officer and striking him using his left and right

shoulders and cursing was sufficient evidence of resisting arrest); *Commonwealth v. Thompson*, 922 A.2d 926 (Pa.Super. 2007) (couples' interlocking of arms and legs on the ground to prevent handcuffing required substantial force to pull them apart leaving officer exhausted); *Commonwealth v. Stevenson*, 894 A.2d 759, 775 (Pa.Super. 2006) (defendant pushed officer, violently struggled with the officer, and mule-kicked him twice); *Commonwealth v. Jackson*, 907 A.2d 540, 546 (Pa.Super. 2006) (defendant kicked officer during lawful investigative detention); *Lyons*, *supra* (defendant kicked and struggled in freezing cold creek with deputy sheriffs requiring two sheriffs to subdue him); *Commonwealth v. Guerrisi*, 443 A.2d 818 (Pa.Super. 1982) (defendant struck officer in the groin); *Miller*, *supra* at 147 (defendant was "attacking police[,]" flailed his arms and upper part of his body in a rapid fashion, "push[ed] through" an officer, strained and struggled against the police and bruised an officer's leg).

Appellant's pulling away, putting his foot down, attempting to stand, and moving his hands to the front of his body are the precise types of actions that were not designed to be encompassed by the resisting arrest statute. Indeed, Appellant's trivial acts of resistance are the type of actions not covered by the statute so as to avoid inviting abusive prosecution. The Commonwealth failed to prove that Appellant statutorily-resisted arrest.

Appellant's next two issues are that the Commonwealth introduced insufficient evidence to prove disorderly conduct under 18 Pa.C.S. § 5503(a)(1), charged as a third-degree misdemeanor pursuant to § 5503(b). The pertinent disorderly conduct charge set forth that, "A person is guilty of disorderly conduct if, with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he (1) engages in fighting or threatening or violent or tumultuous behavior."  18 Pa.C.S. § 5503(a)(1).  In addition, because the Commonwealth charged Appellant with a misdemeanor offense, it also had to show his intent was "to cause substantial harm or serious inconvenience, or [that] he persist[ed] in disorderly conduct after reasonable warning or request to desist."  18 Pa.C.S.A. § 5503(b).  Appellant argues that the evidence did not demonstrate that he engaged in fighting, threatening, violent, or tumultuous behavior or had the intent to cause substantial harm to the public by causing annoyance, alarm, or serious public inconvenience.

Appellant's actions of pulling away, putting his foot down, attempting to stand, and moving his hands in front of his body are not violent actions that were intended to harm the officers.  This Court has also recognized,

> "Tumultuous" is not defined in Section 5503 or elsewhere in the Crimes Code. Commonly, 'tumultuous' is defined as 'marked by tumult'; 'tending or disposed to cause or incite a tumult'; or 'marked by violent or overwhelming turbulence or upheaval.' Merriam Webster's Collegiate Dictionary 1272 (10th ed. 1996). "Tumult" is relevantly defined as "a disorderly agitation ... of a

crowd usu. with uproar and confusion of voices," or 'a violent outburst."

***Commonwealth v. Love***, 896 A.2d 1276, 1285 (Pa.Super. 2006).  Again, Appellant's actions were not marked by violent or overwhelming turbulence nor did he agitate a crowd or engage in a violent outburst.  Further, there was insufficient evidence to establish public inconvenience, annoyance, or alarm.

The disorderly conduct statute defines "public" as "affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public."  18 Pa.C.S. § 5503(c).  Here, the undisputed testimony of the three police officers was that no other person was present in the parking lot at the time and that the incident occurred away from the street at the "far end of the parking lot."  N.T., 11/19/13, at 72.  In sum, the evidence presented at trial established that the disturbance occurred away from the street and sidewalks as well as the presence of the public.

Since no members of the public were present, it is not a reasonable inference that he intended to cause public annoyance, alarm, or inconvenience, let alone substantial harm or inconvenience.  To the extent that the Commonwealth argues that he recklessly disregarded a risk of

creating such a disturbance, it fails to provide legal authority to support the view that a person creates a substantial and unjustifiable risk of alarm, annoyance, or inconvenience where the general public is not present. Thus, the Commonwealth's evidence was insufficient as a matter of law to meet the disorderly conduct charge for which Appellant was convicted.

The final two claims Appellant levels attack the sufficiency of the evidence as to his harassment conviction. "A person commits the crime of harassment when, with intent to harass, annoy or alarm another person, the person communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings, or caricatures." 18 Pa.C.S. § 2709(a)(4). Appellant maintains that the language he used was not lewd, lascivious, threatening, or obscene nor did the Commonwealth establish that he intended to annoy, harass, or alarm the police.

The specific language at issue is Appellant's statement that Officer DeLozier "was going to take him to prison, strip him, abuse him and rape him." N.T., 11/19/13, at 118. Black's Law Dictionary defines "lewd" as "[o]bscene or indecent; tending to moral impurity or wantonness." Black's Law Dictionary 919 (7th Ed. 1999). Similarly, it defines lascivious as "([o]f conduct) tending to excite lust; lewd; indecent; obscene." *Id*. at 886. The Commonwealth does not and did not below contend that the statement was threatening, nor can it be construed as a threat. The definition of "obscene"

provided by Black's Law Dictionary is as follows, "[e]xtremely offensive under contemporary community standards of morality and decency; grossly repugnant to the generally accepted notions of what is appropriate." ***See also*** 18 Pa.C.S. § 5903 (defining obscenity as "'Obscene.' Any material or performance, if: (1) the average person applying contemporary community standards would find that the subject matter taken as a whole appeals to the prurient interest; (2) the subject matter depicts or describes in a patently offensive way, sexual conduct of a type described in this section; and (3) the subject matter, taken as a whole, lacks serious literary, artistic, political, educational or scientific value.").

The crux of each of the words in the harassment statute are focused on words intended to evoke sexual desire. ***See also Commonwealth v. Cox***, 72 A.3d 719, 722 n.4 (Pa.Super. 2013); ***Commonwealth v. Fenton***, 750 A.2d 863 (Pa.Super. 2003); ***Brockway v. Shepherd***, 942 F.Supp. 1012, 1015 (M.D.Pa. 1996) (discussing the term "obscene" and Pennsylvania's disorderly conduct statute). Here, it is evident that Appellant was not intending to evoke sexual desire or lust. Appellant's odd assertion to police was not a lewd, lascivious, or obscene statement. There is no evidence that Appellant committed harassment. For the aforementioned reasons, we reverse each of Appellant's convictions.

Judgment of sentence reversed. Appellant discharged. Jurisdiction relinquished.

Judge Musmanno joins this memorandum.

Judge Ott files a concurring and dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/14/2015